SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
Walter W. Noss (CA 277580)
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)
wnoss@scott-scott.com
        – and –
Joseph P. Guglielmo
Erin Green Comite
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212.223.4478
Facsimile:  212.223.6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOSTEN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RITE AID CORPORATION, <br><br> Defendant. | Civ. No. **'18CV0152 JLS  JLB** <br><br> CLASS ACTION COMPLAINT AND JURY DEMAND |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................... 1

II.     PARTIES ............................................................................... 5

    A.   Plaintiff ........................................................................ 5

    B.   Defendant .................................................................... 7

III.    JURISDICTION AND VENUE ............................................. 8

IV.     FACTUAL BACKGROUND ................................................ 9

    A.   Health Insurance and Prescription Drug Benefits in the United States ............................................................... 9

    B.   Standardized Prescription Claims Adjudication Process ................... 10

    C.   Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price ................................................. 12

    D.   Other Pharmacies Report Their Generic Prescription Drug Discount Program Prices as Their U&C Prices ............................................ 15

    E.   Rite Aid's RSP Prices Are Its True U&C Prices for RSP Generics ....................................................................... 16

    F.   Rite Aid Improperly Overcharges Plaintiff and the Class for RSP Generics .................................................................... 18

V.      CLASS ACTION ALLEGATIONS ......................................22

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ................25

VII.    FIRST CLAIM FOR RELIEF ..............................................28

VIII.   SECOND CLAIM FOR RELIEF ........................................31

IX.     THIRD CLAIM FOR RELIEF .............................................33

X.      FOURTH CLAIM FOR RELIEF .........................................36

XI.     FIFTH CLAIM FOR RELIEF .............................................37

XII.    SIXTH CLAIM FOR RELIEF .............................................40

XIII.   PRAYER FOR RELIEF .....................................................41

XIV.    JURY DEMAND ...............................................................42

i

## I.      INTRODUCTION

1.      Plaintiff, Robert Josten, brings this action on behalf of himself and all others similarly situated (the "Class"[1]) against Defendant Rite Aid Corporation ("Defendant" or "Rite Aid" or the "Company") to recover for the harm caused by Rite Aid's unfair and deceptive price scheme to artificially inflate the "usual and customary" prices reported and used to charge Plaintiff and members of the Class for purchases of certain generic prescription drugs at Rite Aid pharmacies.

2.      About 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits.[2]  A feature of most of these health insurance plans is the shared cost of prescription drugs.  Typically, when a consumer fills a prescription for a medically necessary prescription drug under his or her health insurance plan, the third-party payor pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment, coinsurance, or deductible payment.

3.      In an effort to control their prescription drug costs, many insurance companies and third-party payors require consumers to purchase generic prescription drugs when available because generic drugs often cost less than the brand-name version.  According to a report by the Generic Pharmaceutical Association, 89% of all prescriptions dispensed in the United States now are generic drugs.[3]  Consumers also save money when they purchase generic

---

[1]      Unless otherwise stated, references to the Class herein include and apply to the California Class, as defined below.

[2]      Stephanie Marken, *U.S. Uninsured Rate at 11%, Lowest in Eight-Year Trend*,     http://www.gallup.com/poll/190484/uninsured-rate-lowest-in-eight-year-trend.aspx (last visited January 19, 2018).

[3]      Generic Pharmaceutical Association, 2016 Generic Drug Savings & Access in the United States Report, http://www.gphaonline.org/media/generic-drug-savings-2016/index.html (last visited January 19, 2018).

prescription drugs over more expensive brand-name versions because they pay lower copayment, coinsurance, or deductible amounts for these generics.

4.    Instead of reaping the benefit of these intended savings, however, Plaintiff and members of the Class are paying much more for certain generics than Rite Aid's cash-paying customers[4] who fill their generic prescriptions through Rite Aid's discount generic drug program, called the "Rx Savings Program" ("RSP"), without using health insurance.

5.    A pharmacy cannot charge a consumer or report to a third-party payor a higher price for prescription drugs than the pharmacy's "usual and customary" ("U&C") price.  The U&C price is referred to by Rite Aid and known throughout the pharmacy industry as the price that the pharmacy most commonly charges the cash-paying public.   Indeed, Rite Aid's practices violate federal and state regulations, including the Medicare Prescription Drug Benefit Manual, which defines the "usual and customary price" as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug."  42 C.F.R. §423.100.

6.    As alleged below, Rite Aid, instead of complying with this requirement, maintains an undisclosed, dual pricing scheme for the generic prescription drugs available through the RSP.  Indeed, Rite Aid has used its RSP as a mechanism to knowingly and intentionally overcharge consumers like Plaintiff and the Class, in excess of Rite Aid's actual U&C prices for these generics.

7.    Rite Aid is the third largest retail pharmacy in the United States with over 4,500 retail pharmacies in 31 states and the District of Columbia.  In fiscal

---

[4]    "Cash-paying customers," also known as "self-paying customers," refers to customers who pay for the drugs themselves – whether by cash, credit card, or check – without using insurance.

year 2017, Rite Aid earned approximately $18.2 billion in pharmacy sales in the United States.[5]

8.     Rite Aid, through its RSP, allows cash-paying customers to purchase more than 350 widely prescribed generic drugs for $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions (the "RSP Prices").

9.     Rite Aid's RSP formulary (the "Directory of Generic Medications" attached as Exhibit A) includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments (the "RSP Generics").   RSP prices apply only to prescription generics that Rite Aid includes in the formulary.

10.     Rite Aid's RSP program is not a special, limited, or a one-time offer. Any member of the general public is eligible to participate in the program.  Rite Aid does not limit the eligibility for, or duration of the availability of, RSP Prices other than to require cash payment.

11.     Although any member of the general public is eligible to participate in the RSP, Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase.   Furthermore, while Rite Aid pharmacists often advise customers who **do not** have insurance of the availability of the RSP, they do not advise customers **using insurance** that the drug being purchased may be cheaper if they paid with cash through the RSP, a program that Rite Aid touts as being helpful for people who do not have insurance or who are uninsured.  Moreover, upon information and belief, many pharmacies are prohibited by pharmacy benefit

---

[5]     2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929 z10-k.htm).

3

managers ("PBMs")[6] to disclose such information to customers using insurance to purchase their drugs.

12. Even with knowledge of the RSP and its prices, customers using insurance still may not be able to ascertain that they are being charged inflated copayments. For example, while the "usual and customary" price Rite Aid reports to a third-party payor may exceed the RSP price for the same drug, the copayment paid by the customer may ultimately be lower than the RSP price. However, because copayments are usually calculated based on the "usual and customary" price Rite Aid reports to third-party payors, the customer would have paid a lower copayment but for Rite Aid's practice of reporting inflated "usual and customary" prices to third-party payors. The complex and involved analysis needed to ascertain Rite Aid's illegal scheme requires both access to information that customers do not have and deduction beyond that expected of a lay customer.

13. Upon information and belief, the majority of Rite Aid's cash-paying customers pay no more than the RSP Prices.

14. Unbeknownst to Plaintiff and the Class, Rite Aid's RSP Prices represent Rite Aid's actual U&C prices for the RSP Generics. For the RSP Generics, Rite Aid should have reported and charged to Plaintiff and the Class the RSP Prices as Rite Aid's U&C price, because the RSP Price was, and still is, the price Rite Aid charges customers paying cash without insurance. But for years,

---

[6] PBMs are basically middle men that go between the third-party payors and everyone else in the healthcare industry. PBMs' technical function is to administer health coverage providers' prescription benefit programs. PBMs develop coverage providers' formularies (the list of prescription benefits included in coverage at various pricing "tiers"), process claims, and negotiate with manufacturers. PBMs also contract with retail and community pharmacies. Pharmacies agree to dispense covered prescription products to insured customers. Contracts between PBMs and pharmacies provide for a payment rate for each prescription, plus a dispensing fee kept by the pharmacies. Pharmacies are also responsible for collecting patient cost-sharing payments (co-payments) and sending those to the PBMs or reducing the PBMs' or plans' share owed by that amount.

4

1   Rite Aid has knowingly and intentionally reported artificially inflated U&C prices

2   for RSP Generics on claims for reimbursement submitted to third-party payors.

3   Because the reported U&C price is used to calculate the amount a consumer must

4   pay, Rite Aid also overcharged consumers for RSP Generics by improperly

5   collecting inflated copayments, coinsurance, or deductible amounts.

6        15.   Rite Aid's misconduct has caused Plaintiff and the other members of

7   the Class to suffer significant injury.  This action is brought as a class action on

8   behalf of all consumers nationwide, or in the alternative, in the state of California,

9   who purchased or paid for RSP Generics, other than for resale (*see* Class

10  definitions below).  Accordingly, Plaintiff seeks to recover restitution, monetary

11  damages, injunctive relief, and equitable or other remedies for negligent

12  misrepresentation, unjust enrichment, and violations of California consumer

13  protection statutes enumerated below, and for declaratory and injunctive relief

14  under the Declaratory Judgment Act.

15  **II.   PARTIES**

16        **A.   Plaintiff**

17        16.   Plaintiff Robert Josten is, and at all times relevant was, domiciled in

18  the State of California.  Plaintiff has purchased generic versions of medications for

19  personal use from Rite Aid in California between 2014 and the present.  Plaintiff

20  carries federal health insurance through Medicare and carried Medicare Advantage

21  coverage through Blue Shield of California during the time he purchased

22  prescription generic drugs from Rite Aid.  Medications prescribed to Plaintiff

23  appear on the list of RSP Generics attached as Exhibit A.  Although the

24  prescription generic drugs that Plaintiff purchased were contained on the RSP

25  formulary, at no point in time when these purchases were made was Plaintiff aware

26  of the RSP, that the drugs he purchased were on the RSP formulary, or that the

27  prices of the drugs under the RSP were cheaper than what he paid, or otherwise

28

5

less than the amount Rite Aid submitted to his insurance.   Moreover, because Plaintiff's insurance covered the drugs he purchased, he had no reason to conduct an investigation to determine whether he could purchase the drugs at a lower price through an alternative means.   Rite Aid overcharged Plaintiff on his purchases of RSP Generics.   Rite Aid is required to charge Plaintiff an amount that does not exceed the U&C price Rite Aid charges its cash-paying customers for these generic prescription drugs.   For these sales, Rite Aid knowingly based Plaintiff's payment on a purported U&C price that was fraudulently inflated above Rite Aid's true U&C price – that is, the price Rite Aid offers under its RSP program.   Through its fraudulent pricing scheme, Rite Aid has overcharged Plaintiff, and as a result, Plaintiff has overpaid for his RSP Generics by at least $18.68, as indicated in the chart:

| Prescription | Date Purchased | Days' Supply | Plaintiff Paid | PSC (U&C) Price (* = pro-rated from 30 day or 90 day price) |
|---|---|---|---|---|
| DRUG 1 | 9/12/2016 | 7 | $4.42 | $2.33* |
| DRUG 2 | 03/09/2016 | 7 | $4.42 | $2.33* |
| DRUG 3 | 04/30/2015 | 7 | $4.30 | $2.33* |
| DRUG 4 | 01/14/2015 | 7 | $4.30 | $2.33* |
| DRUG 5 | 8/28/2017 | 75 | $21.00 | $13.33* |
| DRUG 6 | 6/12/2017 | 75 | $15.82 | $13.33* |
| DRUG 7 | 2/14/2017 | 75 | $15.82 | $13.33* |
| **TOTAL PAID** | | | **$70.08** | |
| **TOTAL RSP PRICE** | | | | **$49.31** |
| **OVERPAYMENT** | **$20.77** | | | |

17.    Plaintiff reasonably believed that because he pays premiums for health insurance with prescription benefits coverage and because he is enrolled in Medicare that he would pay at least the same as, and not more than, a cash-paying customer for his prescriptions filled at Rite Aid.   Plaintiff would not have paid the inflated prices absent Rite Aid's deception.

6

18. To maintain continuity of his medical care, Plaintiff anticipates filling future prescriptions for RSP Generics at a Rite Aid pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Rite Aid continues its wrongful conduct.

19. Consumers' purchases of RSP Generics, including those of Plaintiff and members of the Class, are medically necessary, and thus, are non-discretionary purchases. As such, Plaintiff and the Class cannot, and are not required to, avoid future purchases of medically-necessary RSP Generics from Rite Aid – their established pharmacy with which they have a standing relationship and prescription history.

20. Plaintiff and members of the Class have been injured in their business or property by having paid or reimbursed more for RSP Generics than they would have absent Rite Aid's misconduct alleged herein. Plaintiff was injured by the illegal, unjust, and deceptive conduct described herein, both individually and in a manner that was common and typical of Class members. Each time Rite Aid charged Plaintiff a price for a drug that was higher than the price listed on the RSP for that same drug, Plaintiff suffered a separate and independent injury.

**B. Defendant**

21. Defendant Rite Aid is a Delaware corporation with its headquarters at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

22. Rite Aid is the third largest retail drugstore in the United States. Rite Aid operates 4,536 retail pharmacies in 31 states and the District of Columbia.[7] There are 582 Rite Aid retail pharmacies in the State of California.[8]

---

[7] 2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929 z10-k.htm).

23.   Rite Aid relies heavily on its pharmacy sales.  In Rite Aid's 2017 fiscal year, prescription drug sales made up 68.3% of Rite Aid's total drugstore sales.  Rite Aid filled 302 million prescriptions in fiscal year 2017.  Rite Aid's latest annual report filed with the Securities Exchange Commission on May 3, 2017 lists Rite Aid's total prescription drug sales for each of the three most recent fiscal years at over $18 billion.[9]

24.   In addition to its retail stores, Rite Aid operates three distribution centers in California − 513,000 and 200,000 square foot facilities located in Woodland, California, and a 914,000 square foot facility located in Lancaster, California.    Further, Rite Aid operates a 55,650 square foot ice cream manufacturing facility and a 32,000 square foot storage facility in El Monte, California.

## III.   JURISDICTION AND VENUE

25.   This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are hundreds of thousands, and likely millions, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000; and Rite Aid is a citizen of a state different from that of Plaintiff and members of the Class.  Moreover, Rite Aid's wrongful conduct, as described herein, foreseeably affects consumers in California

---

[8]   2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

[9]   2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

and nationwide.  This Court also has subject matter jurisdiction over Plaintiff and the proposed Class' claims pursuant to 28 U.S.C. §1367(a).

26.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§1391(b)-(d) and 1441(a), because, *inter alia*, each Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Rite Aid operates pharmacies in this District and maintains contacts within this District that are significant and sufficient to subject it to personal jurisdiction.

## IV.    FACTUAL BACKGROUND

### A.    Health Insurance and Prescription Drug Benefits in the United States

27.    The vast majority of Americans have a health insurance plan (either private or public) that covers at least a portion of their medical and prescription drug expenses.

28.    Health insurance is paid for by a premium that covers medical and prescription drug benefits for a defined period.  Health insurance can be purchased directly by an individual or obtained through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates.  Consumers pay premiums to receive their health insurance benefits.

29.    If a health insurance plan covers outpatient prescription drugs, the cost for prescription drugs is often shared between the consumer and the third-party payor.  Such cost sharing can take the form of deductible payments, coinsurance payments, or copayments.  In general, deductibles are the dollar amount the consumer pays during the benefit period (usually a year) before the health insurance plan starts to make payments for drug costs.  Coinsurance generally requires a consumer to pay a stated percentage of drug costs.

9

1   Copayments are generally fixed dollar payments made by a consumer toward drug
2   costs.

3        30.    Consumers purchase health insurance and enroll in employer-
4   sponsored health insurance plans to protect themselves from unexpected high
5   medical costs, including prescription drug costs.  Given the premiums paid in
6   exchange for health insurance benefits (including prescription drug benefits),
7   consumers expect to pay the same price or less than the price paid by uninsured or
8   cash-paying individuals for a prescription.  Otherwise, consumers not only would
9   receive no benefit from their prescription drug benefits, but, in fact, would be
10  punished for having health insurance.  Therefore, Plaintiff and members of the
11  Class reasonably expect to pay the same or less for RSP Generics than cash-paying
12  Rite Aid customers enrolled in the RSP program.

13       31.    Generic versions of brand name drugs typically are priced
14  significantly below the brand name versions.  Thus, as part of the cost-sharing
15  structure relating to prescription drug benefits, third-party payors frequently
16  encourage or require plan participants to have their prescriptions filled with
17  generics in an effort to save on skyrocketing prescription drug costs.  Generics
18  typically provide consumers with a lower-cost alternative to brand name
19  pharmaceuticals while providing the same treatment.  Here, Plaintiff and the
20  members of the Class expected to save money and pay less than cash-paying
21  customers by purchasing RSP Generics, not to have Rite Aid overcharge them for
22  these drugs.

23      **B.**    **Standardized Prescription Claims Adjudication Process**

24       32.    The prescription claims adjudication process, which is the process of
25  accepting or denying prescription claims submitted to a third-party payor, is a
26  systematic, standardized electronic process used throughout the pharmaceutical
27  industry.

28

33.   This uniform process is derived from National Council for Prescription Drug Programs ("NCPDP") industry standards for the electronic transmission and adjudication of pharmacy claims.   NCPDP is a non-profit organization that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services.[10]   The NCPDP standards have been adopted in federal legislation, including the Health Insurance Portability and Accountability Act ("HIPAA"), the Medicare Modernization Act ("MMA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH"), and Meaningful Use ("MU").[11]   For example, HIPAA requires uniform methods and codes for exchanging electronic information with health insurance plans.   These standards are referred to as the NCPDP Telecommunication Standard.   HIPAA also requires prescribers to follow the NCPDP SCRIPT Standards when prescribing drugs under Medicare Part D.   42 C.F.R. §423.160.

34.   When a consumer presents a prescription claim at a pharmacy, key information such as the consumer's name, drug dispensed, and quantity dispensed is transmitted via interstate wire from the pharmacy to the correct third-party payor (or its agent) to process and adjudicate the claim.[12]   The third-party payor instantaneously processes the prescription claim according to the benefits plan assigned to the consumer.   The third-party payor electronically transmits a message back to the pharmacy via interstate wire indicating whether the drug and consumer are covered and, if so, the amount the pharmacy must collect from the consumer as

---

[10]   About NCPDP, https://www.ncpdp.org/About-Us (last visited January 19, 2018).

[11]   *Id.*

[12]   A third-party payor may utilize the services of a pharmacy benefit manager ("PBM") as its agent to administer its prescription drug benefit.

1   a copayment, coinsurance, or deductible amount.  Any portion of the drug price not

2   paid by the consumer is borne by the third-party payor.  The whole adjudication

3   process occurs in a matter of seconds.

4         35.    Rite Aid, Plaintiff, and members of the Class all participate in this

5   automated and systematic claims adjudication process when RSP Generics are

6   filled.

7         36.    The out-of-pocket amount that consumers are required to pay

8   (whether in the form of a copayment, coinsurance, or deductible amount) in order

9   to receive the prescription is calculated based on the U&C price reported by Rite

10   Aid.  The out-of-pocket amount a consumer pays cannot exceed the U&C price.

11   The drug reimbursement amount reported to third-party payors also cannot exceed

12   the U&C price.  Thus, the price reported and charged to Plaintiff and the Class

13   cannot exceed the U&C price.  Upon information and belief, Rite Aid uniformly

14   administers its fraudulent U&C pricing scheme such that it uses the same inflated

15   U&C price for a particular RSP Generic that it reports and charges to Plaintiff and

16   the Class.

17        **C.**    **Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price**

18

19         37.    As part of the adjudication process, the pharmacy must report the

20   pharmacy's U&C price for the drug being dispensed.  Pharmacies are required to

21   report their U&C prices for each prescription transaction using NCPDP's

22   mandatory pricing segment code 426-DQ.[13]

23         38.    The term "usual and customary" is not ambiguous.  The U&C price

24   submitted in the adjudication process is generally defined as the cash price charged

25

26   [13]   *Telecommunication Version 5 Questions, Answers and Editorial Updates* at

27   38 (Feb. 2010), https://ncpdp.org/members/pdf/Version_5_questions_v35.pdf (last visited January 19, 2018).

28

to the general public, exclusive of sales tax or other amounts claimed.[14]   The

following sources, among others, reflect the commonly accepted industry meaning

of the term "usual and customary" price:

(a)    The NCPDP, which created standard billing forms used for

drug claims, is a standard-setting organization that represents virtually every

sector of the pharmacy services industry.   NCPDP authored explanatory

materials for its billing forms that state that the "usual and customary"

charge field on the billing form (field 426-DQ) means "amount charged cash

customers for the prescription."   Congress authorized the Secretary of HHS

to "adopt" standard billing forms (42 U.S.C. §1320d-1(a)), and, under that

authority, the Secretary "adopted" the current NCPDP electronic form as the

standard electronic health care claim form.   45 C.F.R. §162.1102 (a).   *See*

*also* 42 C.F.R. §423.160 (incorporating NCPDP standards into the Medicare

Part D program).

(b)    The Academy of Managed Care Pharmacy ("AMCP") is a

professional association that includes health systems and PBMs.   An AMCP

Guide to Pharmaceutical Payment Methods (October 2007) defines "usual

and customary" price as "[t]he price for a given drug or service that a

pharmacy would charge a cash-paying customer without the benefit of

insurance provided through a payer or intermediary with a contract with the

pharmacy."   The Pharmaceutical Care Management Association, a national

association dedicated to representing pharmacy benefit managers, utilizes a

similar definition.

---

[14]    *See, e.g.,* Illinois Department of Healthcare and Family Services, *Handbook for Providers of Pharmacy Services*, https://www.illinois.gov/hfs/ SiteCollection Documents/ p200.pdf (last visited January 19, 2018).

(c)     Several reports by the Government Accountability Office on "usual and customary" price trends in drug pricing, issued from August 2005 through February 2011, define the "usual and customary price" as "the price an individual without prescription drug coverage would pay at a retail pharmacy." *See, e.g.*, GAO Report, "Prescription Drugs: Trends in Usual and Customary Prices for Commonly Used Drugs," February 10, 2011.

(d)     The Code of Federal Regulations and the Medicare Prescription Drug Benefit Manual (Chapter 5, §10.2, Benefits and Beneficiary Protections, Rev. 9/30/11) define usual and customary price as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug." 42 C.F.R. §423.100.

(e)     The same Manual (Chapter 14, §50.4.2, n.1) stated that the discounted prices that Wal-Mart charged to its customers "is considered Wal-Mart's 'usual and customary' price."

39.     Rite Aid knows exactly what is required and involved in reporting U&C prices.  Rite Aid operates EnvisionRxOptions ("EnvisionRxOptions") as the PBM arm of the Company.[15]  Rite Aid acquired EnvisionRxOptions (then known as EnvisionRx) in 2015 to administer pharmacy benefit programs and offer pharmacy benefit management services, including, among other things, claims processing.  As a PBM, EnvisionRxOptions maintains a network of participating pharmacies, which, of course, includes Rite Aid retail pharmacies, among others.

40.     The current EnvisionRxOptions "Provider Portal" is available to EnvisionRxOptions's network of participating pharmacies and "contains detailed

---

[15]     2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929 z10-k.htm).

explanations of certain conditions of participation in the EnvisionRx Pharmacy Network. Procedures are outlined for the electronic submission of Pharmacy Claims. Also contained are helpful contact numbers, payment terms, answers to common questions and our pricing and reimbursement process."[16]

41. The Provider Portal states that the participating pharmacies are to submit claims for payment in NCPDP format.

42. The Provider Portal states that pharmacies "may not collect copayments, coinsurances and deductibles that exceed your Pharmacy's [usual and customary price]."

**D. Other Pharmacies Report Their Generic Prescription Drug Discount Program Prices as Their U&C Prices**

43. Because of the price differentials, generic versions of prescription drugs are liberally and substantially substituted for their brand name counterparts. In every state, pharmacists are permitted (and, in some states, required) to substitute a generic product for a brand name product unless the doctor has indicated that the prescription for the brand name product must be dispensed as written. Today, nearly 89% of all prescriptions are filled with generic drugs.

44. In 2006, the major retailers with pharmacy departments began offering hundreds of generic prescription drugs at reduced prices.[17] These retailers were likely able to absorb lower margins on generic drug sales because pharmacy sales represented a low percentage of their total sales.

45. For example, in September 2006, Wal-Mart began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-

---

[16]    https://envisionrx.com/pdf/ProviderPortal.pdf (last visited January 19, 2018).

[17]    Tracey Walker, *Big retailers' generic discounts validate the case for low-cost drugs*, MODERN MEDICINE NETWORK, Nov. 1, 2006, http://managedhealthcareexecutive.modernmedicine.com/managed-healthcare-executive/news/clinical/pharmacy/big-retailers-generic-discounts-validate-case-lo?trendmd-shared=0 (last visited January 19, 2018).

day supply.  In November of that same year, Target began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-day supply.[18]   Upon information and belief, Wal-Mart and Target report to health insurance plans their $4 per 30-day supply for generic prescription drugs as their U&C prices.

46.    Shortly after the implementation of these programs, the Centers for Medicare & Medicaid Services ("CMS") offered guidance on the lower cash prices pharmacies were offering on generic prescriptions.[19]   In the October 11, 2006 guidance, CMS was careful to note the following:

> Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers.  The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price. Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price. To illustrate, suppose a Plan's usual negotiated price for a specific drug is $10 with a beneficiary copay of 25% for a generic drug. Suppose Wal-Mart offers the same generic drug throughout the benefit for $4.  The Plan considers the $4 to take place of the $10 negotiated price.  The $4 is not considered a lower cash price, because it is not a one-time special price.  The Plan will adjudicate Wal-Mart's claim for $4 and the beneficiary will pay only a $1 copay, rather than a $2.50 copay.  This means that both the Plan and the beneficiary are benefiting from the Wal-Mart "usual and customary" price.[20]

**E.    Rite Aid's RSP Prices Are Its True U&C Prices for RSP Generics**

47.    In 2007, Rite Aid created the RSP – a loyalty program targeted to cash customers – to compete with the major retailers' prices for generic drugs.

---

[18]    *Target Expands $4 Program on Generics to All Pharmacies*, THE NEW YORK TIMES, Nov. 21, 2006, http://www. nytimes.com/2006/11/21/business/ 21drug.html (last visited January 19, 2018).

[19]    CMS, *HPMS Q & A – Lower Cash Price Policy*, CENTER FOR BENEFICIARY CHOICES, Oct. 11, 2006, https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovContra/Downloads/QADiscountsandTrOOP_10060 6.pdf (last visited January 19, 2018).

[20]    *Id.*

16

48.     Upon information and belief, Rite Aid implemented the RSP program as a scheme to maximize reimbursements from third-party payors and payments from consumers through fraudulently inflated U&C prices, while still remaining competitive for cash-paying prescription drug customers.

49.     The RSP program is a discount prescription drug program that offers savings on hundreds of generic prescription drugs.  The RSP program is not a third-party health insurance plan; it is not insurance or a substitute for insurance. Enrollment in the RSP program was, and continues to be, open to cash-paying customers.  Rite Aid does not charge individuals to join the RSP.  Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase, and further, its pharmacists do not advise customers using insurance that the drug being purchased may be cheaper through the RSP.

50.     Rite Aid, through its RSP, allows cash-paying customers to purchase more than 350 widely prescribed generic drugs for $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions.

51.     Rite Aid's RSP formulary includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments.  RSP Prices apply only to prescription generics listed on the formulary.

52.     Rite Aid designed the RSP program to appeal to price-sensitive customers, who, for the most part, take long-term maintenance medications. Customers who take maintenance medications, many of whom are elderly or disabled, are the most valuable to Rite Aid.

53.     Rite Aid's RSP program is not a special, limited, or a one-time offer. Any pharmacy patron is eligible to participate in the program.  Rite Aid does not limit the eligibility for, or duration of the availability of, RSP prices other than to require cash payment.

54. Thus, Rite Aid RSP Prices clearly fit within the accepted industry meaning and Rite Aid's own understanding of "usual and customary" prices, and thus, represent Rite Aid's true U&C prices for the RSP Generics.

**F. Rite Aid Improperly Overcharges Plaintiff and the Class for RSP Generics**

55. As part of the standardized prescription claims adjudication process, Rite Aid is required to accurately state its U&C price for the prescription being dispensed, in accordance with the NCPDP requirements.

56. The industry standards that Rite Aid follows provide that the U&C price is the cash price offered to the general public for specific drugs. Rite Aid offers the RSP Price as the cash price to the general public and the RSP Price is, in fact, the most common price paid by Rite Aid's cash-paying customers. Thus, under industry standards and Rite Aid's own definition, the RSP Price is Rite Aid's U&C price for the RSP Generics. Rite Aid also knows that it is industry standard that the drug reimbursement price and the amount collected from the consumer cannot exceed the U&C price.

57. Yet, Rite Aid charges vastly different prices for RSP Generics depending on whether the payer is an insurer or a cash-paying RSP customer. While RSP customers pay $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions of RSP Generics, Plaintiff and members of the Class pay much higher prices. Rite Aid effectively maintains an improper dual U&C pricing structure for RSP Generics.

58. Rite Aid knowingly fails to report, and continues to fail to report, the RSP Price – its true "usual and customary" price – on charges made to consumers, like Plaintiff and the Class.

59. When Rite Aid adjudicates prescription claims for RSP Generics, it misrepresents the amount of its U&C price on the reimbursement claims forms that Rite Aid submits to third-party payors. In the field requiring Rite Aid to report its

18

U&C price, Rite Aid does not report its RSP price, which is its true U&C price, but instead reports a much higher price. Rite Aid thus ignores the true U&C prices, and instead knowingly and improperly charges vastly inflated prices to third-party payors. As a result, because the amount a consumer must pay is dictated by the inflated U&C price communicated to the third-party payor, the amount that Rite Aid charges consumers is also artificially inflated.

60.     Thus, Rite Aid's failure to maintain and report accurate U&C prices for RSP Generics in the Company's pharmacy computer system has systematically injured and will continue to injure Plaintiff and the Class.

61.     In short, the RSP program allows Rite Aid to compete with its competitors' discounted prices for its cash-paying customers while still receiving higher payments from its customers who carry insurance. Rite Aid uses the RSP program to hide its true U&C prices from consumers and third-party payors, which allows Rite Aid to continue charging consumers and third-party payors a higher rate for RSP Generics than cash-paying customers through the RSP program. The RSP program enables Rite Aid to unlawfully report artificially inflated U&C prices to third-party payors and to collect from consumers artificially inflated copays.

62.     Upon information and belief, Rite Aid uses the same inflated U&C price for any given RSP Generic (of the same strength and dosage) that it reports and charges to Plaintiff and the Class. Thus, the manner in which Rite Aid fails to report and incorporate the RSP Prices into its U&C prices for the RSP Generics is uniform and systematically applied through Rite Aid's electronic prescription claims adjudication process.

63.     Plaintiff and members of the Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the most common price offered to cash-paying members of the general public. Moreover, Plaintiff and members of the Class were unaware that Rite Aid's representation at

1    the point of purchase for the RSP Generics that the copayment demanded and

2    charged was not accurate.

3         64.    Rite Aid also did not and does not inform Plaintiff and members of

4    the Class, that RSP Prices for RSP Generics are lower than the amount Rite Aid

5    was charging them.  Rite Aid either wrongfully conceals or omits such information

6    by failing to tell consumers and third-party payors about the RSP program, or by

7    misrepresenting to consumers and third-party payors that the RSP program would

8    not apply to their purchases.

9         65.    For instances where the copayment charged to a customer was lower

10   than the RSP price for the same drug, customers were unaware, and incapable of

11   ascertaining, that their copayment would have been lower but for Rite Aid's

12   practice of illegally submitting inflated "usual and customary" prices to third-party

13   payors.

14        66.    As part of its fraudulent price scheme, Rite Aid has reported and

15   charged U&C prices for RSP Generics that, as demonstrated by the charts below,

16   are up to 24 times the U&C prices reported by some of its most significant

17   competitors and up to 9.5 times its own RSP Prices.

18        67.    The chart below shows U&C prices submitted to New York's

19   Medicaid program for the purposes of claims adjudication.   The U&C prices

20   submitted by Rite Aid unequivocally are inflated as compared with its competitors'

21   and its own RSP prices.

| | SUFFOLK COUNTY, NY | | | | |
| DRUG | WalMart | Target | Shoprite | Rite Aid | Rite Aid (RSP Price) |
|---|---|---|---|---|---|
| Carvedilol, 6.25 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $43.98 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $17.33 | $10.00 |

| DRUG | SUFFOLK COUNTY, NY | | | | |
|---|---|---|---|---|---|
| | WalMart | Target | Shoprite | Rite Aid | Rite Aid (RSP Price) |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $4.00 | $4.00 | $9.99 | $29.99 | $10.00 |
| Metformin HCL, 1,000 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $37.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $4.00 | $3.99 | $19.66 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $18.76 | $10.00 |
| Fluoxetine, 20 mg, quantity 30 | $4.00 | $4.00 | $9.99 | $28.39 | $10.00 |

68.    The chart below shows the U&C prices submitted to Florida's Medicaid program for purposes of claims adjudication.  The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | ORLANDO, FL | | |
|---|---|---|---|
| | WalMart | Winn-Dixie | Rite Aid | Rite Aid (RSP Price) |
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $41.99 | $47.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $29.73 | N/A | $37.99 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $21.99 | $95.99 | $10.00 |

69.    The chart below shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication.   The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | PHILADELPHIA, PA | | | |
| | WalMart | Shoprite | Rite Aid | Rite Aid (RSP Price) |
|---|---|---|---|---|
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $7.49 | $47.99 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $2.99 | $18.99 | $10.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $9.00 | $3.99 | $23.99 | $10.00 |
| Metformin HCL, 1000 mg TAB, quantity 60 | $9.00 | $4.00 | $31.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $5.99 | $21.69 | $10.00 |
| Warfarin, 1 mg TAB, quantity 30 | $4.00 | $4.00 | $20.69 | $10.00 |

## V.    CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following Class:

**Nationwide Class**

All persons or entities in the United States and its territories who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

**OR IN THE ALTERNATIVE**

**California Class**

All persons or entities in California who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic

22

prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

71.   Excluded from each Class are:

(a)   The Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns;

(b)   All governmental entities, except for governmental-funded employee benefit plans;

(c)   All persons or entities who purchased RSP Generics for purposes of resale;

(d)   Any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

72.   Numerosity: The proposed Class consists of at least hundreds of thousands, and likely millions, of individual Rite Aid customers as well as numerous third-party payors, making joinder of all members impractical.   The exact size of the Class and the identities of the individual members thereof are ascertainable through Rite Aid's records, including, but not limited to, their billing and collection records.

73.   Superiority of Class Action: Plaintiff and the Class suffered, and will continue to suffer, harm as a result of Rite Aid's unfair, deceptive, unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the Class is impractical.   Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome for the courts in which the individual litigations would proceed.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Rite Aid's common course of conduct.   The class action device allows a single court to provide the benefits of uniform adjudication,

23

1   judicial economy, and the fair and equitable handling of all the Class members'
2   claims in a single forum.

3        74.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class
4   members because Plaintiff and all of the Class members' claims originate from the
5   same willful conduct, practice, and procedure on the part of Rite Aid and Plaintiff
6   possesses the same interests and has suffered the same injuries as each Class
7   member.  Like all members of the proposed Class, Plaintiff was overcharged by
8   Rite Aid for RSP Generics who reported and charged him prices that Rite Aid
9   fraudulently inflated far above its U&C prices.

10        75.   <u>Common Questions of Law and Fact Predominate</u>: There are
11   questions of law and fact common to Plaintiff and the Class members, and those
12   questions substantially predominate over any questions that may affect individual
13   members of the Class within the meaning of Federal Rules of Civil Procedure
14   23(a)(2) and 23(b)(3).  Common questions of fact and law include:

15        (a)   whether Rite Aid artificially inflated the U&C prices it reported
16        and charged for RSP Generics above the price that cash-paying Rite Aid
17        customers pay for the same prescriptions;

18        (b)   whether Rite Aid omitted and concealed material facts from its
19        communications and disclosures regarding its pricing scheme;

20        (c)   whether Rite Aid has overcharged and continues to overcharge
21        Plaintiff and Class members who paid for RSP Generics;

22        (d)   whether Rite Aid engaged in unfair methods of competition,
23        unconscionable acts or practices, and unfair, deceptive, and unlawful acts or
24        practices in connection with the pricing and sale of RSP Generics;

25        (e)   whether, as a result of Rite Aid's misconduct, Plaintiff and
26        Class members have to seek restitution and damages, and if so, the amount
27        of restitution and damages;

28

(f)     whether, as a result of Rite Aid's misconduct, Plaintiff and the Class members are entitled to equitable or other relief, and, if so, the nature of such relief; and

(g)     whether, as a result of Rite Aid's misconduct, Rite Aid should be enjoined from engaging in such conduct in the future.

76.    The Class has a well-defined community of interest.  Rite Aid has acted and failed to act on grounds generally applicable to Plaintiff and Class members, requiring the Court's imposition of uniform and final injunctive relief and corresponding declaratory relief to ensure compatible standards of conduct toward the Class.

77.    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests adverse to those of the Class members.

78.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

79.    Plaintiff and the Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief until recently.

80.    Plaintiff and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the unlawful conduct alleged herein until recently.

81.     Rite Aid's pricing scheme did not reveal facts that would have put Plaintiff or the Class members on notice that Rite Aid was reporting and charging inflated prices for RSP Generics.  Rite Aid misrepresented at the point of purchase that the copayment was accurate; and Rite Aid omitted at the point of purchase that Plaintiff was not receiving any benefit from his insurance.

82.     Because Rite Aid did not disclose the pricing scheme, Plaintiff and the Class members were unaware of Rite Aid's unlawful conduct alleged herein and did not know that they were paying artificially inflated prices for RSP Generics.

83.     Not only did Rite Aid fail to disclose material information, but it also actively misled consumers by inflating and misrepresenting U&C prices for RSP Generics to Plaintiff that were far higher than the RSP Prices (the actual U&C prices).  Rite Aid also failed to post drug prices in a clear manner and in a way that would alert Plaintiff and the Class members to the artificially inflated prices charged by Rite Aid.  By so doing, Rite Aid misled Plaintiff and the Class members into overpaying for RSP Generics.

84.     Rite Aid's affirmative acts alleged herein, including acts in furtherance of its unlawful pricing scheme, were wrongfully concealed and carried out in a manner that precluded detection.

85.     Under the circumstances alleged, Rite Aid owed a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs.

86.     The relationship between Rite Aid and Plaintiff and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of the Plaintiff and the Class.  As a pharmacy providing prescription medication to consumers, Rite Aid owes a duty to provide accurate information regarding the prices of generic prescription drugs, including RSP Generics.  Furthermore, as a pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which

mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications.[21]  Plaintiff and the Class reasonably expected Rite Aid to help "achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."[22]

87.    The relationship between Rite Aid and Plaintiff and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiff and the Class.  As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Rite Aid, Rite Aid owes a duty to Plaintiff and the Class to provide them with accurate information regarding the U&C price of generic prescription drugs, including RSP Generics.

88.    Rite Aid also had a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs because it was entirely likely and foreseeable that Plaintiff and the Class would be injured when they paid for RSP Generics at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct. Rite Aid knows exactly what is required and involved in reporting U&C prices given that Rite Aid's own Provider Portal requires Rite Aid not to exceed the U&C prices when submitting claims, and thus to charge the lower RSP price to Plaintiff and the Class.  Imposing a duty to provide Plaintiff and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying

---

[21]    Code    of    Ethics,    American    Pharmacists    Association, https://www.pharmacist.com/code-ethics (last visited January 19, 2018).
[22]    *Id.*

1  customers for the exact same drug (*i.e.*, the U&C price).  *See*, *e.g.*, 31 U.S.C.

2  §§3729, *et seq.*; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R.

3  §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b); Cal. Welf. & Inst. Code

4  §14105.455.

5        89.    Plaintiff and the Class members could not have discovered the alleged

6  unlawful activities at an earlier date by exercise of reasonable diligence because

7  Rite Aid employed deceptive practices and techniques of secrecy to avoid

8  detection of its activities. Rite Aid fraudulently concealed its activities by various

9  means and methods, including misrepresentations regarding the real U&C prices of

10  the RSP Generics.

11        90.    Because Rite Aid affirmatively concealed its pricing scheme, Plaintiff

12  and the Class had no knowledge until recently of the alleged fraudulent activities

13  or information which would have caused a reasonably diligent person to

14  investigate whether Rite Aid committed the actionable activities detailed herein.

15        91.    As a result of Rite Aid's fraudulent concealment, the running of any

16  statute of limitations has been tolled with respect to any claims that Plaintiff and

17  the Class members have as a result of the unlawful conduct alleged in this

18  Complaint.

19  **VII.   FIRST CLAIM FOR RELIEF**

20           **Negligent Misrepresentation**

21  **Asserted by Plaintiff on Behalf of the Class and California Class**

22        92.    Plaintiff repeats each and every allegation contained in the paragraphs

23  above and incorporates such allegations by reference herein.

24        93.    Plaintiff alleges this claim on behalf of himself and the Class, or, in

25  the alternative, on behalf of the California Class.

26

27

28

1    94.    Under the circumstances alleged, Rite Aid owed a duty to Plaintiff

2  and members of the Class to provide them with accurate information regarding the

3  prices of their generic prescription drugs.

4    95.    The relationship between Rite Aid and Plaintiff and the Class is one

5  such that Rite Aid has an obligation of reasonable conduct for the benefit of the

6  Plaintiff and the Class.   As a pharmacy providing prescription medication to

7  consumers, Rite Aid owes a duty to provide accurate information regarding the

8  prices of generic prescription drugs, including RSP Generics.   Furthermore, as a

9  pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which

10  mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell

11  the truth and to assist individuals in making the best use of medications.[23]   Plaintiff

12  and the Class reasonably expected Rite Aid to help "achieve optimum benefit from

13  their medications, to be committed to their welfare, and to maintain their trust."[24]

14    96.    The relationship between Rite Aid and Plaintiff and the Class is one in

15  which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiff

16  and the Class.   As an entity that is in the business of supplying information for the

17  guidance of both third-party payors and consumers in their business transactions

18  with Rite Aid, Rite Aid owes a duty to Plaintiff and the Class to provide them with

19  accurate information regarding the U&C price of generic prescription drugs,

20  including RSP Generics.

21    97.    Rite Aid also had a duty to Plaintiff and members of the Class to

22  provide them with accurate information regarding the prices of their generic

23  prescription drugs because it was entirely likely and foreseeable that Plaintiff and

24  the Class would be injured when they paid for RSP Generics at amounts that were

25

26  [23]    Code of Ethics, *supra* note 21.

27  [24]    *Id.*

28

far higher than the prices they would have paid but for Rite Aid's misconduct. Rite Aid knows exactly what is required and involved in reporting U&C prices, given that Rite Aid's own Pharmacy Manual defines U&C and application of that definition would have required Rite Aid to charge the lower RSP price to Plaintiff and the Class.  Imposing a duty to provide Plaintiff and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (*i.e.*, the U&C price).  *See*, *e.g.*, 31 U.S.C. §§3729, *et seq.*; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R. §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b); Cal. Welf. & Inst. Code §14105.455.

98.    Rite Aid materially misrepresented and concealed the true U&C prices of RSP Generics.

99.    The true U&C price is material to Plaintiff and the Class because the misrepresentation and concealment of the true U&C price of RSP Generics causes them to be unable to accurately evaluate the cost of the prescriptions being purchased and, in fact, causes them to overpay for those prescriptions.  Had they known Rite Aid was reporting to and charging them inflated and false amounts, they would not have proceeded with the transactions.

100.   Rite Aid made such misrepresentations and omissions to Plaintiff and the Class each time Rite Aid reported and charged artificially inflated prices for RSP Generics.

101.   Rite Aid had no reasonable grounds to believe that these misrepresentations and omissions were true.  The prices Rite Aid reported to third-

party payors were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to cash-paying customers.

102.   Rite Aid intended to induce Plaintiff and the members of the Class to rely on its misrepresentations and omissions.  Rite Aid knew that Plaintiff and the members of the Class would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a result, Plaintiff and the members of the Class would pay higher prices than the true U&C prices for RSP Generics.

103.   Plaintiff and members the Class justifiably relied on Rite Aid's misrepresentations and omissions in that Plaintiff and the Class would not have purchased or paid for RSP Generics from Rite Aid at falsely inflated amounts but for Rite Aid's misrepresentations and omissions.  Plaintiff and the Class' reliance on Rite Aid's misrepresentations and omissions is, thus, to their detriment.

104.   As a proximate result of Rite Aid's negligent conduct, Plaintiff and the Class have been damaged because they paid for RSP Generics at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

105.   Rite Aid is therefore liable to Plaintiff and the Class for the damages they sustained.

## VIII.  SECOND CLAIM FOR RELIEF

### Unjust Enrichment
### Asserted by Plaintiff on Behalf of the Class and the California Class

106.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

107.   Plaintiff alleges this claim on behalf of himself and the Class, or, in the alternative, on behalf of the California Class.

108.   By means of Rite Aid's wrongful conduct alleged herein, Rite Aid knowingly reported to and charged Plaintiff and the Class inflated prices for RSP

Generics in a manner that is unfair and unconscionable and violates the fundamental principles of justice, equity, and good conscience.

109.   Rite Aid knowingly received, appreciated, and retained wrongful benefits and funds from Plaintiff and the Class.  In so doing, Rite Aid acted with conscious disregard for the rights of Plaintiff and the Class.

110.   As a result of Rite Aid's wrongful conduct as alleged herein, Rite Aid has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

111.   Rite Aid's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

112.   Under the common law doctrine of unjust enrichment, it is inequitable for Rite Aid to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of artificially inflated prices on Plaintiff and the Class in an unfair and unconscionable manner.  Rite Aid's retention of such funds under the circumstances alleged herein violates the fundamental principles of justice, equity, and good conscience and therefore constitutes unjust enrichment.

113.   Plaintiff and the Class did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Rite Aid to retain these wrongfully obtained proceeds.

114.   Rite Aid is therefore liable to Plaintiff and the Class for restitution in the amount of Rite Aid's wrongfully obtained profits.

IX.    **THIRD CLAIM FOR RELIEF**

<u>**Violation of the California Unfair Competition Law**</u>
<u>**(Based on Unfair Acts and Practices)**</u>
**Asserted by Plaintiff on Behalf of the California Class**

115.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

116.    Plaintiff brings this claim on behalf of himself and the members of the California Class against Rite Aid.

117.    At all relevant times, Rite Aid, Plaintiff, and the California Class were "persons" within the meaning of Cal. Bus. & Prof. Code §17204.

118.    Under Business and Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.  Rite Aid's unjustified, inflated pricing of RSP Generics is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Generics is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Generics.

119.    Plaintiff and the California Class are entitled to restitution because of Rite Aid's employment of unfair business acts or practices in connection with the sale of RSP Generics to Plaintiff and the California Class, by, among other things:

(a)    reporting to and charging Plaintiff and the California Class unfairly inflated U&C prices for the RSP Generics;

(b)    concealing from Plaintiff and the California Class the true U&C prices of the RSP Generics; and

1          (c)    wrongfully obtaining monies from Plaintiff and the California

2    Class as a result of its deception.

3       120.  Rite Aid has engaged, and continues to engage, in conduct that

4    violates the legislatively declared policies of: (1) California Civil Code §§1572,

5    1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil

6    Code §1770 against committing acts and practices intended to deceive consumers

7    regarding the representation of goods in certain particulars; (3) the FTCA, 15

8    U.S.C. §45(a)(1), against unfair or deceptive practices; (4) Cal. Penal Code §550

9    against making false, misleading, or fraudulent claims related to health or other

10    insurance benefits; (5) 42 C.F.R. §447.512(b), requiring pharmacies to not seek

11    reimbursement from Medicare Part D that exceeds the providers' "usual and

12    customary charges to the general public"; (6) Federal False Claims Act, 31 U.S.C.

13    §§3729, *et seq.* and California False Claims Act, Cal. Gov't Code §§12650, *et seq.*,

14    against submitting false or fraudulent claims for payment to governmental entities;

15    and (7) Cal. Welf. & Inst. Code §14105.455, requiring pharmacy providers to

16    submit their usual and customary charge when billing the Medi-Cal program for

17    prescribed drugs.  Rite Aid gains an unfair advantage over its competitors, whose

18    practices relating to other similar products must comply with these laws.

19       121.  Rite Aid's conduct, including misrepresenting the U&C price of RSP

20    Generics, is substantially injurious to consumers.  Such conduct has caused, and

21    continues to cause, substantial injury to consumers because consumers would not

22    have continued with the transaction but for Rite Aid's deceptive, fraudulent, false,

23    and unfair acts and practices.  Consumers have thus overpaid for RSP Generics.

24    Such injury is not outweighed by any countervailing benefits to consumers or

25    competition.  Indeed, no benefit to consumers or competition results from Rite

26    Aid's conduct.  Since consumers reasonably rely on Rite Aid's representations of

27    its merchandise and injury results from ordinary use of its merchandise, consumers

28

1  could not have reasonably avoided such injury.  *Davis v. Ford Motor Credit Co.*,

2  179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar*

3  *Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the

4  definition of "unfair" in Section 5 of the FTC Act).

5      122.   Rite Aid willfully and knowingly engaged in the deceptive and unfair

6  acts and practices described above and knew or should have known that those acts

7  and practices were unlawful and thus in violation of California's Unfair

8  Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.

9      123.   The facts that Rite Aid misrepresented and concealed were material to

10  the decisions of Plaintiff and the members of the California Class about whether to

11  pay for Rite Aid's RSP Generics, in that they would not have proceeded with the

12  transaction but for Rite Aid's deceptive, fraudulent, false, and unfair acts and

13  practices.

14      124.   Rite Aid intended for Plaintiff and the members of the California

15  Class to pay for RSP Generics in reliance upon Rite Aid's deceptive and unfair

16  acts and practices.

17      125.   As a direct and proximate result of Rite Aid's deceptive, fraudulent,

18  false, and unfair acts and practices, Plaintiff and the members of the California

19  Class were deceived into paying artificially inflated prices for RSP Generics and

20  are entitled to restitution.

21      126.   Rite Aid is therefore liable to Plaintiff and the members of the

22  California Class for restitution, injunctive relief, costs, and reasonable attorneys'

23  fees to the extent provided by law.

24

25

26

27

28

## X.      FOURTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### (Based on Unlawful Acts and Practices)
**Asserted by Plaintiff on Behalf of the California Class**

127.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

128.   Plaintiff brings this claim on behalf of himself and the members of the California Class against Rite Aid.

129.   At all relevant times, Rite Aid, Plaintiff, and the California Class were "persons" within the meaning of Cal. Bus. & Prof. Code §17204.

130.   The violation of any law constitutes an unlawful business practice under Business and Professions Code §17200.

131.   Rite Aid violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200, *et seq*., the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45(a)(1), Cal. Penal Code §550, 42 C.F.R. §447.512(b)(2), Cal. Welf. & Inst. Code §14105.455, 31 U.S.C. §§3729, *et seq*., 42 U.S.C. §1320c-5(a)(1), 42 U.S.C. §1320a-7(b)(6), 42 C.F.R. §§423.505(i)(4)(iv), (k)(3), 42 C.F.R. §447.512(b), and by violating the common law.  By violating these laws, Rite Aid has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

132.   Rite Aid willfully and knowingly engaged in the unlawful acts and practices alleged herein above and knew or should have known that those acts and practices were unlawful and thus in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.

36

133.   The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff and the members of the California Class about whether to pay for Rite Aid's RSP Generics, in that they would not have proceeded with the transaction but for Rite Aid's unlawful, deceptive, fraudulent, false, and unfair acts and practices.

134.   Rite Aid intended for Plaintiff and the members of the California Class to pay for RSP Generics in reliance upon Rite Aid's unlawful, deceptive, false, unfair acts and practices.

135.   As a direct and proximate result of Rite Aid's unlawful, deceptive and unfair acts and practices, Plaintiff and the members of the California Class were deceived into paying artificially inflated prices for RSP Generics and have been damaged thereby.

136.   Rite Aid is therefore liable to Plaintiff and the members of the California Class for restitution, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

## XI.   FIFTH CLAIM FOR RELIEF

### Violation of the Consumer Legal Remedies Act ("CLRA")
### (for Injunctive Relief)
### Asserted by Plaintiff on Behalf of the California Class

137.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

138.   Plaintiff brings this claim on behalf of himself and the members of the California Class against Rite Aid.

139.   Rite Aid is a "person" within the meaning of Cal. Civil Code §1761(c).

140.   Each sale by Rite Aid of a RSP Generic constitutes a "transaction" within the meaning of Cal. Civil Code §1761(e).

141.   The RSP Generics that Plaintiff and California Class members paid for are "goods" within the meaning of Cal. Civil Code §1761(a).

142.   Plaintiff and California Class members are "consumers" within the meaning of Cal. Civil Code §1761(d).

143.   Plaintiff and California Class members paid for prescriptions for the medically-necessary treatment of illnesses.  These payments qualify as transactions that resulted in the sale of goods to consumers for personal use within the meaning of Cal. Civil Code §§1761 and 1770(a).

144.   Plaintiff and the California Class have suffered losses because of Rite Aid's employment of deceptive, fraudulent, false and unfair business acts or practices in connection with the sale of RSP Generics to Plaintiff and the California Class, by, among other things:

(a)   reporting to and charging Plaintiff and the California Class fraudulently inflated U&C prices for the RSP Generics;

(b)   communicating to and charging Plaintiff and the California Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)   concealing from Plaintiff and the California Class the true U&C prices of the RSP Generics; and

(d)   wrongfully obtaining monies from Plaintiff and the California Class as a result of its deception.

145.   The acts and practices of Rite Aid as described above were intended to deceive Plaintiff and members of the California Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the California Class.  These actions violated and continue to violate: (i) §1770(a)(13) of the CLRA, in that Rite Aid's acts and practices constitute false or misleading statements of fact concerning reasons for, existence of, or amounts of price

1 reductions; and (ii) §1770(a)(16) of the CLRA, in that Rite Aid's acts and practices

2 constitute false or misleading statements of fact in representing that the subject of a

3 transaction has been supplied in accordance with a previous representation when it

4 has not.

5     146. By committing the acts alleged above, Rite Aid has violated the

6 CLRA.

7     147. Rite Aid willfully and knowingly engaged in the deceptive,

8 fraudulent, false, and unfair acts and practices alleged herein above and knew or

9 should have known that those acts and practices were deceptive, fraudulent, false

10 and unfair and thus in violation of the CLRA.

11     148. The facts that Rite Aid misrepresented and concealed were material to

12 the decisions of Plaintiff and the members of the California Class about whether to

13 pay for Rite Aid's RSP Generics, in that they would not have proceeded with the

14 transaction but for Rite Aid's deceptive, fraudulent, false, and unfair acts and

15 practices.

16     149. Rite Aid intended for Plaintiff and the members of the California

17 Class to pay for RSP Generics in reliance upon Rite Aid's deceptive, fraudulent,

18 false, and unfair acts and practices.

19     150. As a direct and proximate result of Rite Aid's deceptive, fraudulent,

20 false, and unfair acts and practices, Plaintiff and the members of the California

21 Class were deceived into paying artificially inflated prices for RSP Generics and

22 have been damaged thereby.

23     151. Rite Aid is therefore liable to Plaintiff and the members of the

24 California Class for injunctive relief, costs, and reasonable attorneys' fees to the

25 extent provided by law.

26

27

28

## XII.   SIXTH CLAIM FOR RELIEF

### Declaratory and Injunctive Relief
### Asserted by Plaintiff

152.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

153.   Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the state statutes described in this Complaint.

154.   During the Class Period, Rite Aid's deceptive inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years'-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day.   Therefore, Plaintiff faces a substantial and imminent risk of future harm and will be injured in the future.

155.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Rite Aid's conduct continues to violate the statutes and laws referenced herein.

156.   The Court also should issue corresponding injunctive relief enjoining Rite Aid from conducting business through the unlawful, unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint; and requiring Defendant to implement whatever measures are necessary to remedy the unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint.

157.   Legal remedies are inadequate to address the substantial likelihood of future harm Plaintiff will sustain in making purchases of PSC Generics.   While monetary damages will compensate Plaintiff for Rite Aid's past misconduct,

40

monetary damages will not prevent future misconduct, which Plaintiff has alleged is likely to occur.

158.   The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Rite Aid if an injunction is issued.  Plaintiff and members of the Class will likely incur damages.  On the other hand, the cost to Rite Aid of complying with an injunction is relatively minimal, especially given its pre-existing obligation to do so.

159.   Issuance of the requested injunction will not disserve the public interest.   To the contrary, such an injunction would benefit the public by controlling skyrocketing prescription drug costs for hundreds of thousands, if not millions, of consumers and the third-party payors that pay for prescription benefit coverage for those individuals.

## XIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the members of the Class seek judgment in an amount to be determined at trial, as follows:

A.    That all members of the Class are owed at least the difference between the amount they paid and the U&C offered to the general public for all RSP Generics purchased during the applicable liability period of the RSP program;

B.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, and declare that Plaintiff is proper Class representatives;

C.    That the Court grant permanent injunctive relief to prohibit Rite Aid from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award compensatory, consequential, and general damages in an amount to be determined at trial;

1        E.     That the Court order disgorgement and restitution of all earnings,

2  profits, compensation, and benefits received by Rite Aid as a result of its unlawful

3  acts, omissions, and practices;

4        F.     That the Court award statutory treble damages, and punitive or

5  exemplary damages, to the extent permitted by law;

6        G.     That the unlawful acts alleged in this Complaint be adjudged and

7  decreed to be a violation of the unfair and deceptive business acts and practices in

8  violation of the consumer protection statutes alleged herein;

9        H.     That the Court enter a declaratory judgment in favor of Plaintiff, as

10  described above;

11        I.     That the Court award to Plaintiff the cost and disbursements of the

12  action, along with reasonable attorneys' fees;

13        J.     That the Court award pre- and post-judgment interest at the maximum

14  legal rate; and

15        K.     That the Court grant all such other relief as it deems just and proper.

16  **XIV.  JURY DEMAND**

17        Plaintiff and the members of the Class hereby demand a jury trial on all

18  claims so triable.

19

Dated:  January 23, 2018             **SCOTT+SCOTT, ATTORNEYS AT**

20                                         **LAW, LLP**

21

22                            s/ Walter W. Noss

23                            Walter W. Noss

                          707 Broadway, Suite 1000

24                            San Diego, CA 92101

25                            Telephone: 619-233-4565

                          Facsimile:  619-233-0508

26                            wnoss@scott-scott.com

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Joseph P. Guglielmo
Erin Green Comite
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Alfred G. Yates, Jr.
**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
300 Mt. Lebanon Boulevard, Suite 206-B
Pittsburgh, PA 15234-1507
Telephone: 412-391-5164
Facsimile:  412-471-1033
yateslaw@aol.com

*Attorneys for Plaintiff*

43

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Robert Josten

## DEFENDANTS

Rite Aid Corporation

**(b)** County of Residence of First Listed Plaintiff    Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Cumberland
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Walter W. Noss / Scott+Scott, Attorneys at Law, LLP
707 Broadway, Suite 1000
San Diego, CA 92101 / 619-233-4565

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
     Plaintiff

☐ 3   Federal Question
     *(U.S. Government Not a Party)*

☐ 2   U.S. Government
     Defendant

☒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
     Proceeding

☐ 2   Removed from
     State Court

☐ 3   Remanded from
     Appellate Court

☐ 4   Reinstated or
     Reopened

☐ 5   Transferred from
     Another District
     *(specify)*

☐ 6   Multidistrict
     Litigation -
     Transfer

☐ 8   Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332

Brief description of cause:
Plaintiff alleges violations of the Calif. Unfair Competition Law and the Calif.Consumer Legal Remedies Act.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Hon. Anthony J. Battaglia

DOCKET NUMBER   3:17-cv-01340-AJB

DATE
01/23/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ Walter W. Noss

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.