UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOSTEN, on Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>          Defendant. | Case No.:  18-cv-0152-AJB-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO AMEND**<br><br>**(Doc. No. 15)** |

Rite Aid moves to dismiss plaintiff Robert Josten's complaint, asserting nearly identical arguments made in its motion to dismiss filed in a related case, *Stafford v. Rite Aid Corp.*, 17-cv-1340-AJB-JLB, which the Court will refer to herein. The crucial missing piece in Josten's complaint, like Stafford's, is his failure to plead tolling with specificity. Because he fails to adequately plead tolling, several of his claims are **DISMISSED**. However, the Court also **GRANTS** Josten leave to amend his complaint to cure these deficiencies. Thus, the Court **GRANTS** Rite Aid's dismissal motion.

## I.  BACKGROUND

The following facts are taken from Plaintiff's complaint, (Doc. No. 1), and are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013) (reasoning that when considering a motion

to dismiss, courts presume the facts alleged by the plaintiff are true).

Plaintiff's claims are all based on the assertion that he was forced to pay an inflated copayment under his insurance plan because Rite Aid reported prescription drug prices to his insurance carrier that were not its "usual and customary" ("U&C") prices for those drugs. (Doc. No. 1 ¶ 1.) About 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits. (*Id*. ¶ 2.) A feature of most of these health insurance plans is the shared cost of prescription drugs. (*Id*.) Typically, when a consumer fills a prescription for a medically necessary prescription drug under his or her health insurance plan, the third-party payor ("TPP") pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment, coinsurance, or deductible payment. (*Id*.)

In an effort to control their prescription drug costs, many insurance companies and TPPs require consumers to purchase generic prescription drugs when available because generic drugs often cost less than the brand-name version. (*Id*. ¶ 3.) Plaintiff alleges that he and the members of the Class are paying much more for certain generics than Rite Aid's cash-paying customers who fill their generic prescriptions through Rite Aid's discount generic drug program, called the "Rx Savings [P]rogram" ("Rx Program" or "RSP"), without using health insurance. (*Id*. ¶ 4.)

The crux of his argument is that a pharmacy cannot charge a consumer, or report to a TPP, a higher price for prescription drugs than the pharmacy's U&C price. (*Id*. ¶ 45.) The U&C price is referred to by Rite Aid and known throughout the pharmacy industry as the price that the pharmacy most commonly charges the cash-paying public. (*Id*.) Plaintiff alleges that Rite Aid, instead of complying with this requirement, maintains an undisclosed, dual pricing scheme for the prescription drugs available through the Rx Program and overcharges consumers like Plaintiff and the Class, in excess of Rite Aid's actual U&C prices for these generics. (*Id*. ¶ 6.) Thus, Plaintiff alleges that Rite Aid has knowingly and intentionally reported artificially inflated U&C prices for RSP Generics on claims for

reimbursement submitted to TTP. (*Id.* ¶ 14.)

Plaintiff filed his complaint on January 23, 2018. (Doc. No. 1.) Plaintiff alleges causes of action for violations of: (1) Negligent Misrepresentation; (2) Unjust Enrichment; (3) Unfair Competition law ("UCL") based on unfair acts and practices; (4) UCL based on unlawful acts and practices; (5) Consumer Legal Remedies Act ("CLRA"); and (6) Declaratory and Injunctive Relief. (Doc. No. 1.) In his prayer for relief, Plaintiff requests the Court certify his action as a class action, award compensatory, consequential, and general damages, grant permanent injunctive relief, and award statutory treble, punitive, or exemplary damages, among other things. (*Id.* at 41–42.)

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

# III.   DISCUSSION

Rite Aid argues the complaint should be dismissed for the following reasons: (1) Plaintiff failed to plead any element of the negligent misrepresentation claim, (Doc. No. 15-1 at 11); (2) Plaintiff failed to plead CLRA and UCL standing, (*Id.* at 19); (3) Plaintiff failed to plead a CLRA claim, (*Id.* at 22); (4) Plaintiff failed to plead a UCL claim, (*Id.* at 23); (5) Plaintiff wrongfully makes a claim for unjust enrichment, (*Id.* at 27); (6) Plaintiff failed to overcome third-party issues, (*Id.* at 27); and (7) some of Plaintiff's claims are time barred, (*Id.* at 28).

The Court will discuss the sufficiency of Josten's negligent misrepresentation claim, standing, and UCL claim, however, because the Court finds Josten did not sufficiently plead equitable tolling, and grants leave to amend, the Court declines to analyze the sufficiency of his CLRA or unjust enrichment claims. The Court urges the parties to review its order in *Stafford* regarding those claims.

## A.   <u>Negligent Misrepresentation</u>

First, Rite Aid argues Josten failed to plead a negligent misrepresentation claim. (Doc. No. 15-1 at 11.) Negligent misrepresentation requires (1) a misrepresentation of a material fact, (2) which is made without reasonable grounds for believing it to be true, (3) with the intent to induce reliance on the misrepresented fact, (4) that justifiable reliance occurs, and (5) resulting damage. *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 196 (2012).

### i.   *Duty*

Rite Aid makes identical arguments to a dismissal motion filed in *Stafford v. Rite Aid*—a related case. (*See Stafford*, 17-cv-1340-AJB-JLB, Doc. No. 32-1 at 13.) Rite Aid argues that there is no contractual obligations between Rite Aid, Josten, and Josten's medical insurance plans which give rise to a duty to disclose its pricing structure. (Doc. No. 15-1 at 12.) Rite Aid also asserts that California's Welfare & Institution Code § 14105.455 also does not establish a duty. (*Id.* at 13.) Finally, Rite Aid states the National Council for Prescription Drug Programs ("NCPDP") also fails to establish a duty.

4

(*Id.* at 14.)

As the Court held in *Stafford*, a duty can arise under California law when "information is given in a business or professional capacity for such a purpose." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 481 (2003). Similarly, Rite Aid owes Josten a duty since they are reporting pricing information in a commercial setting for a business purpose by both selling the prescription drugs to consumers and reporting the pricing to the Rx Program participants, third-party payors, and consumers. (*See Stafford*, 17-cv-1340-AJB-JLB, Doc. No. 41 at 4.) That order also addressed Rite Aid's other theories that no duty arose and dismissed them. (*Id.* at 3–5.) Accordingly, the Court finds Josten plausibly pled that a duty exists.

### ii. *Misrepresentation or Intent to Deceive*

Next, Rite Aid argues Josten "cannot allege any misrepresentation or intent to deceive plaintiff by Rite Aid." (Doc. No. 15-1 at 16.) Rite Aid asserts Josten "sets the amount of his copayment," and that "[t]he complaint lacks any facts to establish that Rite Aid reported prices contrary to that obligation or an intent to deceive." (*Id.* at 16–17.) Moreover, Rite Aid argues Josten acknowledged in his complaint that anyone could participate in the Rx Program and that information regarding the Program was widely available, thus concluding there was no "active concealment or an affirmative representation. . . ." (*Id.* at 17.) However, Josten is not arguing that Rite Aid concealed the Rx Program pricing scheme, but that Rite Aid purposefully failed to report the Rx Program prices thus inflating his copayment prices. To this end, the Court finds Josten plausibly pled this element. (*See, e.g.*, Doc. No. 1 ¶¶ 16, 12, 14.)

### iii. *Reasonable Reliance*

Rite Aid asserts Josten failed to show reasonable reliance for three reasons. (Doc. No. 15-1 at 17.) First, Rite Aid states Josten failed to plead that he relied on a communicated price representation or that anything was communicated to an agent of his. (*Id.*) Second, Josten cannot show detrimental reliance because Rite Aid publicly advertised its Rx Program prices. (*Id.* at 17–18.) Third, Josten's assumption that his copayment price

"would not be more than the RSP prices" is unsupported. (*Id.* at 18.)

Again, as stated in the *Stafford* order, reliance is a question of fact and inappropriate for a motion to dismiss, or even a motion for summary judgment, unless the evidence only supports one conclusion. *See Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 245 (9th Cir. 1990); *Honolulu Disposal Service, Inc. v. American Ben. Plan Adm'rs, Inc.*, 433 F. Supp. 2d 1181, 1190 (D. Haw. 2006); (*Stafford*, 17-cv-1340-AJB-JLB, Doc. No. 41 at 6). Rite Aid has not made such a determinative showing. Further, Josten adequately pled reliance. (Doc. No. 1 ¶¶ 17, 103.)

### iv.    Damages

Rite Aid next alleges Josten failed to plead damages, stating "Plaintiff fails, however, to allege any information about his insurance plan, including the manner in which copayments are calculated, or the prescriptions he purchased." (Doc. No. 15-1 at 18.) However, Josten does plead the price he paid for generic prescriptions was more than the U&C price. (Doc. No. 1 ¶ 16.) Second, Rite Aid argues that his "recognition that the RSP program was available to him makes it implausible that any misrepresentation caused him to pay 'inflated' co-payments." (Doc. No. 15-1 at 18.) Thus, Rite Aid concludes, any damages Josten suffered was because he chose to pay his prescription copayment price rather than the Rx Program prices. (*Id.* at 18–19.) However, the core of Josten's allegations is that his prescription prices were inflated because of Rite Aid's failure to include the Rx Program pricing in reporting the U&C prices and that had the Rx Program prices been included in the U&C pricing reporting, he would have paid a lower price. Thus, Josten has alleged damages.

### v.    Economic Loss Doctrine

Finally, Rite Aid asserts the economic loss doctrine bars Josten's claims. (Doc. No. 15-1 at 19.) The Court discussed identical arguments in the *Stafford* order, finding that although the majority of case law favors Rite Aid's theory, courts have recently held that negligent misrepresentation cases can proceed despite economic loss. (*Stafford*, 17-cv-13400AJB-JLB, Doc. No. 41 at 7–8.) Rite Aid can revisit this argument in summary

judgment.

## B.  <u>CLRA and UCL Standing</u>

Rite Aid alleges Josten failed to plead standing under both the CLRA and the UCL, alleging he failed to show he actually relied on a misrepresentation to his detriment. (Doc. No. 15-1 at 19–20.) However, the Court found, *supra* pp. 5–6, that Josten plausibly alleged both elements. Additionally, as stated in the *Stafford* opinion, the Ninth Circuit recently held "[t]hough 'a previously deceived plaintiff' suing under the UCL, FAL, and CLRA 'may have standing to seek injunctive relief,' the plaintiff must still show 'that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising.'" *Lanovaz v. Twinings North America, Inc.*, 726 Fed. App'x 590, 590 (9th Cir. June 6, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)); (*Stafford*, 17-cv-1340-AJB-JLB, Doc. No. 41 at 9). Josten alleged he "anticipates filling future prescriptions for RSP Generics at a Rite Aid pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Rite Aid continues its wrongful conduct." (Doc. No. 1 ¶ 18.) Thus, Josten has standing under the CLRA and the UCL.

## C.  <u>UCL Claim</u>

Rite Aid asserts that Josten impermissibly based his UCL claims on breaches of contract. (Doc. No. 15-1 at 23.) Rite Aid includes three reasons why the UCL claims should be dismissed: (1) his damages arise from a breach of contract, (*Id.* at 24); (2) he failed to allege restitutionary damages, (*Id.* at 25); and (3) he failed to allege a basis for either an unlawful or an unfair UCL claim, (*Id.* at 26–27).

### i.  *Damages Based on Breach of Contract*

Rite Aid argues that while Josten has not alleged a contractual obligation for it to report its U&C prices to include the Rx Program, even if he did, "it could only be contractual and therefore not for the basis of a UCL claim." (*Id.* at 23.) However, as the Court stated in its *Stafford* order, "California's statutory unfair competition laws broadly prohibits unlawful, unfair, and fraudulent business acts." (*Stafford*, 17-cv-1340-AJB-JLB,

Doc. No. 41 at 11–12) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)).) Josten alleges such acts occurred here.

### ii. *Restitution*

Next, Rite Aid alleges Josten is seeking benefit of the bargain damages when the UCL only permits restitutionary damages. (Doc. No. 15-1 at 25.) "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co.*, 29 Cal. 4th at 1144. However, "an individual may recover profits obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148. "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Id.* at 1149 (quoting *Krause v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 126–27 (2000) (superseded by statute on other grounds)).

Here, Josten asserts he indeed is seeking restitutionary damages and not benefit of the bargain damages. (Doc. No. 19 at 27–28.) "Plaintiff alleges that Rite Aid 'overcharged' him 'by improperly collecting inflated copayments, coinsurance, or deductible amounts' (¶14) and that he 'would not have paid the inflated prices absent Rite Aid's deception.' ¶17." (*Id.* at 27.) Josten continues, "[t]hese amounts are not 'expectation' or 'benefit of the bargain' damages [ ] because they reflect the wrongfully acquired portion of the copayments charged by Rite Aid – not the difference in the value of the prescription drugs promised and the value of the drugs received." (*Id.*) Indeed, courts have held seeking overpayments is a valid form of restitution under the UCL. *Salvato v. Saxon Mortg. Servs., Inc.*, 10-cv-1151-JAH-NLS, 2011 WL 13182854, at *4 (S.D. Cal. Mar. 30, 2011) ("Here, Plaintiffs seek restitution for the overpayments made to Defendant. . . . As discussed above, Plaintiffs are not precluded from seeking recovery of the overpayments. Accordingly, Defendant's motion to dismiss the UCL claim is DENIED."). Thus, the Court finds Josten has sought permissible damages under the UCL.

### iii. Unlawful Claim

Rite Aid argues Josten fails to specify an underlying violation of some law. (Doc. No. 15-1 at 25–26.) The UCL's unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Thus, the UCL allows injured consumers to "borrow[] violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co.*, 29 Cal. 4th at 1143. At this juncture, because the underlying negligent misrepresentation and CLRA claims are dismissed due to tolling, Josten's unlawful claim under the UCL must fail. Thus, the Court **DISMISSES** this claim without prejudice pending Josten's amended motion.

### iv. Unfair Claim

Rite Aid argues Josten's key accusations fail to show that Rite Aid acted in an "unjustified" or "unscrupulous" way. (Doc. No. 15-1 at 26.) Rite Aid also points to Josten's admission that it "disclosed the RSP prices prominently on its website and that it provided all customers, including those with private insurance, the option of avoiding the allegedly higher copayments by purchasing at the RSP price." (*Id.*)

The unfair prong has been defined in various ways, including practices which offend public policy, are immoral or unethical, or are oppressive or substantially injurious to consumers. *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). An unfair practice can also be one in which the utility of the practice is outweighed by a victim's harm. *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999). Finally, it has also been defined as "a practice that is (i) substantially injurious to the consumer, where (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury is not one that consumers themselves could reasonably have avoided." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013).

In response, Josten asserts "that Rite Aid's practices violate California public policy and are therefore unfair under the UCL." (Doc. No. 19 at 29.) Josten also notes that if he

adequately alleged an unlawful claim, his unfair claim would be necessarily sufficiently pled. (*Id.* (citing *EchoStar Satellite Corp. v. NDS Group PLC*, No. SA CV03-0950, 2008 WL 4596644, at *5 (C.D. Cal. Oct. 15, 2008).)

Although the Court finds his unlawful claim fails, his unfair claim has been sufficiently pled. Taking Josten's allegations as true, which the Court is required to do at this stage, purposefully mischarging insured consumers a higher price by failing to report the price it charges its cash-customers—thus setting a higher U&C price scheme—violates public policy and is injurious to consumers. While the gravity of harm is merely increased medicinal costs, on balance, there is no countervailing benefit to the public to have a dual pricing-scheme. Moreover, Rite Aid would not suffer a significant burden or cost by reporting the lower Rx Program prices to calculate the U&C prices. Courts have held such pricing tiers violate the unfair prong. *See Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) ("Examples of unfair business practices include: charging a higher than normal rate for copies of deposition transcripts (by a group of certified shorthand reporters), where the party receiving the original is being given an undisclosed discount as the result of an exclusive volume-discount contract with two insurance companies [citation]. . . .") (internal quotes omitted). Thus, the Court finds Josten has sufficiently pled an unfair claim under the UCL.

**D.** **Tolling of the CLRA, Unjust Enrichment, and Negligent Misrepresentation Claims**

Defendant argues Plaintiff's causes of action for CLRA, unjust enrichment, and negligent misrepresentation are time-barred by their respective statutes of limitations. (*Id.* at 21.) Plaintiff's complaint alleges that the statute of limitations should be tolled because Plaintiff and the Class members could not have discovered the alleged unlawful activities at an earlier date by exercise of reasonable diligence because Rite Aid employed deceptive practices and techniques of secrecy to avoid detection of its activities. (Doc. No. 1 ¶ 89.)

"In a federal diversity action based on alleged violations of state law, the state statute

of limitations controls." *Adams v. I–Flow Corp.*, No. CV09–09550 R(SSx), 2010 WL 1339948, at \*3 (C.D. Cal. Mar. 30, 2010) (citing *Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir. 1987)). The statute of limitations for the foregoing causes of action are as follows: (1) CLRA—three years, Cal. Civ. Code § 1783; (2) unjust enrichment—three years, *In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F. Supp. 2d 1046, 1072 (N.D. Cal. 2008); and (3) negligent misrepresentation—three years, Cal. Civ. Proc. Code § 338(d).

Plaintiff alleges he has purchased generic versions of medications for personal use from Defendant in California between 2014 and present. (Doc. No. 1 ¶ 16.) Thus, Plaintiff's CLRA, unjust enrichment, and negligent misrepresentation claims would be time-barred in 2017. Plaintiff filed his complaint in 2018, a year after the statute of limitations for his various claims. However, Josten alleges these claims should be tolled because he had "neither actual nor constructive knowledge of the facts constituting their claims for relief until recently." (*Id.* ¶ 79.) In his opposition, he argues he is entitled to rely on the discovery rule because Rite Aid's purported misrepresentations were done in secret and could not have been discovered earlier. (Doc. No. 19 at 30.) Additionally, Josten contends he could not have discovered through the exercise of reasonable diligence, the existence of the scheme at an earlier point in time. (Doc. No. 1 ¶ 80.)

"In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C–05–04726 RMW, 2008 WL 4544441, at \*8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (1978)). "The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." *E–Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1319 (2007) (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)). To rely on the delayed discovery rule, "the plaintiff must plead facts showing: '(a) Lack of knowledge. [sic] (b) Lack of means of

obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). [sic] (c) How and when he did actually discover the fraud or mistake.'" *Keilholtz v. Lennox Hearth Products Inc.*, No. C 08–00836 CW, 2009 WL 2905960, *3 (N.D. Cal. Sept. 8, 2009) (quoting *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)).

A plaintiff seeking to take advantage of the delayed discovery rule must plead "the time and manner of discovery." *E–Fab*, 153 Cal. App. 4th at 1319. Here, Josten fails to allege the details of how he uncovered Rite Aid's alleged scheme. He only states that he had neither actual nor constructive knowledge of the facts constituting the claims for relief until recently. (Doc. No. 1 ¶ 27.) Thus, his complaint does not adequately plead tolling under the delayed discovery rule. The Court **DISMISSES** these claims with leave to amend. Accordingly, the Court declines to analyze the sufficiency of Josten's CLRA and unjust enrichment claims, however, points the parties to its prior order in *Stafford* for guidance. (*See Stafford*, 17-cv-1340-AJB-JLB, Doc. No. 41 at 9–11, 15–16.)

## IV.    LEAVE TO AMEND

Courts are urged to grant leave to amend freely when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's deficiency. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). Thus, the Court **GRANTS** leave to amend the tolling section only so Josten can allege specific facts concerning "the time and manner of discovery" in accordance with the Court's instruction herein. *E–Fab*, 153 Cal. App. 4th at 1319.

## V.    CONCLUSION

The Court **GRANTS** Rite Aid's motion to dismiss. (Doc. No. 15.) The Court finds Josten plausibly alleged claims for negligent misrepresentation and under the UCL's unfair prong. Further, Josten has alleged standing under the UCL and the CLRA. However, the Court also finds that Josten failed to specifically allege the discovery of the scheme such that his claims under the CLRA, for negligent misrepresentation, and unjust enrichment cannot be tolled as currently pled. Accordingly, those claims are dismissed leaving his

12

UCL unlawful claim to be dismissed as well since he has not pleaded an underlying violation. Nevertheless, the Court **GRANTS** Josten leave to amend. The first amended complaint is due by **December 11, 2018**.

   **IT IS SO ORDERED.**

Dated: November 20, 2018

Hon. Anthony J. Battaglia
United States District Judge