SCOTT+SCOTT ATTORNEYS AT LAW LLP
Walter W. Noss (CA 277580)
Julie A. Kearns (CA 246949)
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)
wnoss@scott-scott.com
jkearns@scott-scott.com
        – and –
Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212.223.4478
Facsimile:   212.223.6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOSTEN, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>RITE AID CORPORATION,<br><br>            Defendant. | Civ. No. 3:18-cv-00152-AJB-JLB<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   PARTIES ........................................................................................... 5

    A.   Plaintiff ..................................................................................... 5

    B.   Defendant ................................................................................. 8

III.  JURISDICTION AND VENUE ........................................................ 8

IV.   FACTUAL BACKGROUND ............................................................ 9

    A.   Health Insurance and Prescription Drug Benefits in the United States ........................................................................................ 9

    B.   Standardized Prescription Claims Adjudication Process ........ 11

    C.   Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price ................................... 12

    D.   Other Pharmacies Report Their Generic Prescription Drug Discount Program Prices as Their U&C Prices ...................... 15

    E.   Rite Aid's RSP Prices Are Its True U&C Prices for RSP Generics ................................................................................ 17

    F.   Rite Aid Improperly Overcharges Plaintiff and the Class for RSP Generics .......................................................................... 18

V.    CLASS ACTION ALLEGATIONS ............................................... 22

VI.   TOLLING OF THE STATUTE OF LIMITATIONS ...................... 25

VII.  FIRST CLAIM FOR RELIEF ......................................................... 29

VIII. SECOND CLAIM FOR RELIEF .................................................... 32

IX.   THIRD CLAIM FOR RELIEF ....................................................... 33

X.    FOURTH CLAIM FOR RELIEF .................................................... 36

XI.   FIFTH CLAIM FOR RELIEF ......................................................... 37

XII.  SIXTH CLAIM FOR RELIEF ........................................................ 40

XIII. PRAYER FOR RELIEF .................................................................. 41

XIV.  JURY DEMAND ............................................................................ 42

i

## I.  INTRODUCTION

1.  Plaintiff, Robert Josten, brings this action on behalf of himself and all others similarly situated (the "Class"[1]) against Defendant Rite Aid Corporation ("Defendant" or "Rite Aid" or the "Company") to recover for the harm caused by Rite Aid's unfair and deceptive price scheme to artificially inflate the "usual and customary" prices reported and used to charge Plaintiff and members of the Class for purchases of certain generic prescription drugs at Rite Aid pharmacies.

2.  About 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits.[2]  A feature of most of these health insurance plans is the shared cost of prescription drugs.  Typically, when a consumer fills a prescription for a medically necessary prescription drug under his or her health insurance plan, the third-party payor pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment, coinsurance, or deductible payment.

3.  In an effort to control their prescription drug costs, many insurance companies and third-party payors require consumers to purchase generic prescription drugs when available because generic drugs often cost less than the brand-name version.  According to a report by the Generic Pharmaceutical Association, 89% of all prescriptions dispensed in the United States now are generic drugs.[3]  Consumers also save money when they purchase generic

---

[1]  Unless otherwise stated, references to the Class herein include and apply to the California Class, as defined below.

[2]  Stephanie Marken, *U.S. Uninsured Rate at 11%, Lowest in Eight-Year Trend*, http://www.gallup.com/poll/190484/uninsured-rate-lowest-eight-year-trend.aspx  (last  visited January 19, 2018).

[3]  Generic Pharmaceutical Association, 2016 Generic Drug Savings & Access in the United States  Report,  http://www.gphaonline.org/media/generic-drug-savings-2016/index.html  (last visited January 19, 2018).

prescription drugs over more expensive brand-name versions because they pay lower copayment, coinsurance, or deductible amounts for these generics.

4.     Instead of reaping the benefit of these intended savings, however, Plaintiff and members of the Class are paying much more for certain generics than Rite Aid's cash-paying customers[4] who fill their generic prescriptions through Rite Aid's discount generic drug program, called the "Rx Savings Program" ("RSP"), without using health insurance.

5.     A pharmacy cannot charge a consumer or report to a third-party payor a higher price for prescription drugs than the pharmacy's "usual and customary" ("U&C") price.  The U&C price is referred to by Rite Aid and known throughout the pharmacy industry as the price that the pharmacy most commonly charges the cash-paying public.   Indeed, Rite Aid's practices violate federal and state regulations, including the Medicare Prescription Drug Benefit Manual, which defines the "usual and customary price" as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug."  42 C.F.R. §423.100.

6.     As alleged below, Rite Aid, instead of complying with this requirement, maintains an undisclosed, dual pricing scheme for the generic prescription drugs available through the RSP.  Indeed, Rite Aid has used its RSP as a mechanism to knowingly and intentionally overcharge consumers like Plaintiff and the Class, in excess of Rite Aid's actual U&C prices for these generics.

7.     Rite Aid is the third largest retail pharmacy in the United States with over 4,500 retail pharmacies in 31 states and the District of Columbia.  In fiscal

---

[4]     "Cash-paying customers," also known as "self-paying customers," refers to customers who pay for the drugs themselves – whether by cash, credit card, or check – without using insurance.

year 2017, Rite Aid earned approximately $18.2 billion in pharmacy sales in the United States.[5]

8.    Rite Aid, through its RSP, allows cash-paying customers to purchase more than 350 widely prescribed generic drugs for $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions (the "RSP Prices").

9.    Rite Aid's RSP formulary (the "Directory of Generic Medications" attached as Exhibit A) includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments (the "RSP Generics").    RSP prices apply only to prescription generics that Rite Aid includes in the formulary.

10.    Rite Aid's RSP program is not a special, limited, or a one-time offer. Any member of the general public is eligible to participate in the program.  Rite Aid does not limit the eligibility for, or duration of the availability of, RSP Prices other than to require cash payment.

11.    Although any member of the general public is eligible to participate in the RSP, Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase.    Furthermore, while Rite Aid pharmacists often advise customers who ***do not*** have insurance of the availability of the RSP, they do not advise customers ***using insurance*** that the drug being purchased may be cheaper if they paid with cash through the RSP, a program that Rite Aid touts as being helpful for people who do not have insurance or who are uninsured.  Moreover, upon information and belief, many pharmacies are prohibited by pharmacy benefit

---

[5]    2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

3

1   managers ("PBMs")[6] to disclose such information to customers using insurance to
2   purchase their drugs.

3          12.    Even with knowledge of the RSP and its prices, customers using
4   insurance still may not be able to ascertain that they are being charged inflated
5   copayments.  For example, while the "usual and customary" price Rite Aid reports
6   to a third-party payor may exceed the RSP price for the same drug, the copayment
7   paid by the customer may ultimately be lower than the RSP price.  However,
8   because copayments are usually calculated based on the "usual and customary"
9   price Rite Aid reports to third-party payors, the customer would have paid a lower
10  copayment but for Rite Aid's practice of reporting inflated "usual and customary"
11  prices to third-party payors.  The complex and involved analysis needed to
12  ascertain Rite Aid's illegal scheme requires both access to information that
13  customers do not have and deduction beyond that expected of a lay customer.[7]

14

15

16  _____

17  [6]    PBMs are basically middle men that go between the third-party payors and everyone else
    in the healthcare industry.  PBMs' technical function is to administer health coverage providers'
18  prescription benefit programs.  PBMs develop coverage providers' formularies (the list of
    prescription benefits included in coverage at various pricing "tiers"), process claims, and
19  negotiate with manufacturers.  PBMs also contract with retail and community pharmacies.
    Pharmacies agree to dispense covered prescription products to insured customers.  Contracts
20  between PBMs and pharmacies provide for a payment rate for each prescription, plus a
    dispensing fee kept by the pharmacies.  Pharmacies are also responsible for collecting patient
21  cost-sharing payments (co-payments) and sending those to the PBMs or reducing the PBMs' or
    plans' share owed by that amount.

22  [7]    On November 20, 2018, the Court issued an Order Granting Defendant's Motion to
23  Dismiss and Granting Plaintiff Leave to Amend (the "Order").  ECF No. 25.  The Court based its
    grant of Defendant's motion solely on Plaintiff Josten's "failure to plead tolling with specificity,"
24  and therefore several of his claims were dismissed with leave to amend.  *See id.* at 1, 4, 9-11.
    The Court further held in its Order that Plaintiff did not "allege the details of how he uncovered
25  Rite Aid's alleged scheme."  *Id.* at 12.  The Court therefore granted Plaintiff "***leave to amend the***
    ***tolling section only [to] . . . allege specific facts concerning 'the time and manner of***
26  ***discovery'''*** of Defendant's scheme, in accordance with the "instruction" set forth in its Order.
27  *Id.*; *see also infra* at ¶¶80, 90, 92 (amending Plaintiff's tolling allegations in compliance with the
    Court's Order).

28

4

13.     Upon information and belief, the majority of Rite Aid's cash-paying customers pay no more than the RSP Prices.

14.     Unbeknownst to Plaintiff and the Class, Rite Aid's RSP Prices represent Rite Aid's actual U&C prices for the RSP Generics.   For the RSP Generics, Rite Aid should have reported and charged to Plaintiff and the Class the RSP Prices as Rite Aid's U&C price, because the RSP Price was, and still is, the price Rite Aid charges customers paying cash without insurance.   But for years, Rite Aid has knowingly and intentionally reported artificially inflated U&C prices for RSP Generics on claims for reimbursement submitted to third-party payors. Because the reported U&C price is used to calculate the amount a consumer must pay, Rite Aid also overcharged consumers for RSP Generics by improperly collecting inflated copayments, coinsurance, or deductible amounts.

15.     Rite Aid's misconduct has caused Plaintiff and the other members of the Class to suffer significant injury.   This action is brought as a class action on behalf of all consumers nationwide, or in the alternative, in the state of California, who purchased or paid for RSP Generics, other than for resale (*see* Class definitions below).   Accordingly, Plaintiff seeks to recover restitution, monetary damages, injunctive relief, and equitable or other remedies for negligent misrepresentation, unjust enrichment, and violations of California consumer protection statutes enumerated below, and for declaratory and injunctive relief under the Declaratory Judgment Act.

## II.     PARTIES

### A.     Plaintiff

16.     Plaintiff Robert Josten is, and at all times relevant was, domiciled in the State of California.   Plaintiff has purchased generic versions of medications for personal use from Rite Aid in California between 2014 and the present.   Plaintiff carries federal health insurance through Medicare and carried Medicare Advantage

5

coverage through Blue Shield of California during the time he purchased prescription generic drugs from Rite Aid. Medications prescribed to Plaintiff appear on the list of RSP Generics attached as Exhibit A. Although the prescription generic drugs that Plaintiff purchased were contained on the RSP formulary, at no point in time when these purchases were made was Plaintiff aware of the RSP, that the drugs he purchased were on the RSP formulary, or that the prices of the drugs under the RSP were cheaper than what he paid, or otherwise less than the amount Rite Aid submitted to his insurance. Moreover, because Plaintiff's insurance covered the drugs he purchased, he had no reason to conduct an investigation to determine whether he could purchase the drugs at a lower price through an alternative means. Rite Aid overcharged Plaintiff on his purchases of RSP Generics. Rite Aid is required to charge Plaintiff an amount that does not exceed the U&C price Rite Aid charges its cash-paying customers for these generic prescription drugs. For these sales, Rite Aid knowingly based Plaintiff's payment on a purported U&C price that was fraudulently inflated above Rite Aid's true U&C price – that is, the price Rite Aid offers under its RSP program. Through its fraudulent pricing scheme, Rite Aid has overcharged Plaintiff, and as a result, Plaintiff has overpaid for his RSP Generics by at least $18.68, as indicated in the chart:

| Prescription | Date Purchased | Days' Supply | Plaintiff Paid | PSC (U&C) Price (* = pro-rated from 30 day or 90 day price) |
|---|---|---|---|---|
| DRUG 1 | 9/12/2016 | 7 | $4.42 | $2.33* |
| DRUG 2 | 03/09/2016 | 7 | $4.42 | $2.33* |
| DRUG 3 | 04/30/2015 | 7 | $4.30 | $2.33* |
| DRUG 4 | 01/14/2015 | 7 | $4.30 | $2.33* |
| DRUG 5 | 8/28/2017 | 75 | $21.00 | $13.33* |
| DRUG 6 | 6/12/2017 | 75 | $15.82 | $13.33* |
| DRUG 7 | 2/14/2017 | 75 | $15.82 | $13.33* |
| **TOTAL PAID** | | | **$70.08** | |

6

| Prescription | Date Purchased | Days' Supply | Plaintiff Paid | PSC (U&C) Price (* = pro-rated from 30 day or 90 day price) |
|---|---|---|---|---|
| **TOTAL RSP PRICE** | | | | **$49.31** |
| **OVERPAYMENT** | **$20.77** | | | |

17.    Plaintiff reasonably believed that because he pays premiums for health insurance with prescription benefits coverage and because he is enrolled in Medicare that he would pay at least the same as, and not more than, a cash-paying customer for his prescriptions filled at Rite Aid.  Plaintiff would not have paid the inflated prices absent Rite Aid's deception.

18.    To maintain continuity of his medical care, Plaintiff anticipates filling future prescriptions for RSP Generics at a Rite Aid pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Rite Aid continues its wrongful conduct.

19.    Consumers' purchases of RSP Generics, including those of Plaintiff and members of the Class, are medically necessary, and thus, are non-discretionary purchases.  As such, Plaintiff and the Class cannot, and are not required to, avoid future purchases of medically-necessary RSP Generics from Rite Aid – their established pharmacy with which they have a standing relationship and prescription history.

20.    Plaintiff and members of the Class have been injured in their business or property by having paid or reimbursed more for RSP Generics than they would have absent Rite Aid's misconduct alleged herein.  Plaintiff was injured by the illegal, unjust, and deceptive conduct described herein, both individually and in a manner that was common and typical of Class members.  Each time Rite Aid charged Plaintiff a price for a drug that was higher than the price listed on the RSP for that same drug, Plaintiff suffered a separate and independent injury.

7

**B.     Defendant**

21.     Defendant Rite Aid is a Delaware corporation with its headquarters at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

22.     Rite Aid is the third largest retail drugstore in the United States.  Rite Aid operates 4,536 retail pharmacies in 31 states and the District of Columbia.[8] There are 582 Rite Aid retail pharmacies in the State of California.[9]

23.     Rite Aid relies heavily on its pharmacy sales.  In Rite Aid's 2017 fiscal year, prescription drug sales made up 68.3% of Rite Aid's total drugstore sales.  Rite Aid filled 302 million prescriptions in fiscal year 2017.  Rite Aid's latest annual report filed with the Securities Exchange Commission on May 3, 2017 lists Rite Aid's total prescription drug sales for each of the three most recent fiscal years at over $18 billion.[10]

24.     In addition to its retail stores, Rite Aid operates three distribution centers in California − 513,000 and 200,000 square foot facilities located in Woodland, California, and a 914,000 square foot facility located in Lancaster, California.   Further, Rite Aid operates a 55,650 square foot ice cream manufacturing facility and a 32,000 square foot storage facility in El Monte, California.

**III.    JURISDICTION AND VENUE**

25.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) because this is a class action,

---

[8]     2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

[9]     2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

[10]    2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are hundreds of thousands, and likely millions, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000; and Rite Aid is a citizen of a state different from that of Plaintiff and members of the Class.  Moreover, Rite Aid's wrongful conduct, as described herein, foreseeably affects consumers in California and nationwide.  This Court also has subject matter jurisdiction over Plaintiff and the proposed Class' claims pursuant to 28 U.S.C. §1367(a).

26.   Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§1391(b)-(d) and 1441(a), because, *inter alia*, each Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Rite Aid operates pharmacies in this District and maintains contacts within this District that are significant and sufficient to subject it to personal jurisdiction.

## IV.   FACTUAL BACKGROUND

### A.   Health Insurance and Prescription Drug Benefits in the United States

27.   The vast majority of Americans have a health insurance plan (either private or public) that covers at least a portion of their medical and prescription drug expenses.

28.   Health insurance is paid for by a premium that covers medical and prescription drug benefits for a defined period.  Health insurance can be purchased directly by an individual or obtained through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates.  Consumers pay premiums to receive their health insurance benefits.

29.   If a health insurance plan covers outpatient prescription drugs, the cost for prescription drugs is often shared between the consumer and the third-

party payor.   Such cost sharing can take the form of deductible payments, coinsurance payments, or copayments.   In general, deductibles are the dollar amount the consumer pays during the benefit period (usually a year) before the health insurance plan starts to make payments for drug costs.   Coinsurance generally requires a consumer to pay a stated percentage of drug costs. Copayments are generally fixed dollar payments made by a consumer toward drug costs.

30.   Consumers purchase health insurance and enroll in employer-sponsored health insurance plans to protect themselves from unexpected high medical costs, including prescription drug costs.   Given the premiums paid in exchange for health insurance benefits (including prescription drug benefits), consumers expect to pay the same price or less than the price paid by uninsured or cash-paying individuals for a prescription.   Otherwise, consumers not only would receive no benefit from their prescription drug benefits, but, in fact, would be punished for having health insurance.   Therefore, Plaintiff and members of the Class reasonably expect to pay the same or less for RSP Generics than cash-paying Rite Aid customers enrolled in the RSP program.

31.   Generic versions of brand name drugs typically are priced significantly below the brand name versions.   Thus, as part of the cost-sharing structure relating to prescription drug benefits, third-party payors frequently encourage or require plan participants to have their prescriptions filled with generics in an effort to save on skyrocketing prescription drug costs.   Generics typically provide consumers with a lower-cost alternative to brand name pharmaceuticals while providing the same treatment.   Here, Plaintiff and the members of the Class expected to save money and pay less than cash-paying customers by purchasing RSP Generics, not to have Rite Aid overcharge them for these drugs.

### B.      Standardized Prescription Claims Adjudication Process

32.      The prescription claims adjudication process, which is the process of accepting or denying prescription claims submitted to a third-party payor, is a systematic, standardized electronic process used throughout the pharmaceutical industry.

33.      This uniform process is derived from National Council for Prescription Drug Programs ("NCPDP") industry standards for the electronic transmission and adjudication of pharmacy claims.   NCPDP is a non-profit organization that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services.[11]   The NCPDP standards have been adopted in federal legislation, including the Health Insurance Portability and Accountability Act ("HIPAA"), the Medicare Modernization Act ("MMA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH"), and Meaningful Use ("MU").[12]   For example, HIPAA requires uniform methods and codes for exchanging electronic information with health insurance plans.   These standards are referred to as the NCPDP Telecommunication Standard.   HIPAA also requires prescribers to follow the NCPDP SCRIPT Standards when prescribing drugs under Medicare Part D.   42 C.F.R. §423.160.

34.      When a consumer presents a prescription claim at a pharmacy, key information such as the consumer's name, drug dispensed, and quantity dispensed is transmitted via interstate wire from the pharmacy to the correct third-party payor (or its agent) to process and adjudicate the claim.[13]   The third-party payor

---

[11]      About NCPDP, https://www.ncpdp.org/About-Us (last visited January 19, 2018).

[12]      *Id.*

[13]      A third-party payor may utilize the services of a pharmacy benefit manager ("PBM") as its agent to administer its prescription drug benefit.

instantaneously processes the prescription claim according to the benefits plan assigned to the consumer.  The third-party payor electronically transmits a message back to the pharmacy via interstate wire indicating whether the drug and consumer are covered and, if so, the amount the pharmacy must collect from the consumer as a copayment, coinsurance, or deductible amount.  Any portion of the drug price not paid by the consumer is borne by the third-party payor.  The whole adjudication process occurs in a matter of seconds.

35.    Rite Aid, Plaintiff, and members of the Class all participate in this automated and systematic claims adjudication process when RSP Generics are filled.

36.    The out-of-pocket amount that consumers are required to pay (whether in the form of a copayment, coinsurance, or deductible amount) in order to receive the prescription is calculated based on the U&C price reported by Rite Aid.  The out-of-pocket amount a consumer pays cannot exceed the U&C price. The drug reimbursement amount reported to third-party payors also cannot exceed the U&C price.  Thus, the price reported and charged to Plaintiff and the Class cannot exceed the U&C price.  Upon information and belief, Rite Aid uniformly administers its fraudulent U&C pricing scheme such that it uses the same inflated U&C price for a particular RSP Generic that it reports and charges to Plaintiff and the Class.

**C.    Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price**

37.    As part of the adjudication process, the pharmacy must report the pharmacy's U&C price for the drug being dispensed.  Pharmacies are required to

report their U&C prices for each prescription transaction using NCPDP's mandatory pricing segment code 426-DQ.[14]

38. The term "usual and customary" is not ambiguous. The U&C price submitted in the adjudication process is generally defined as the cash price charged to the general public, exclusive of sales tax or other amounts claimed.[15] The following sources, among others, reflect the commonly accepted industry meaning of the term "usual and customary" price:

(a) The NCPDP, which created standard billing forms used for drug claims, is a standard-setting organization that represents virtually every sector of the pharmacy services industry. NCPDP authored explanatory materials for its billing forms that state that the "usual and customary" charge field on the billing form (field 426-DQ) means "amount charged cash customers for the prescription." Congress authorized the Secretary of HHS to "adopt" standard billing forms (42 U.S.C. §1320d-1(a)), and, under that authority, the Secretary "adopted" the current NCPDP electronic form as the standard electronic health care claim form. 45 C.F.R. §162.1102 (a). *See also* 42 C.F.R. §423.160 (incorporating NCPDP standards into the Medicare Part D program).

(b) The Academy of Managed Care Pharmacy ("AMCP") is a professional association that includes health systems and PBMs. An AMCP Guide to Pharmaceutical Payment Methods (October 2007) defines "usual and customary" price as "[t]he price for a given drug or service that a

---

[14] *Telecommunication Version 5 Questions, Answers and Editorial Updates* at 38 (Feb. 2010), https://ncpdp.org/members/pdf/Version_5_questions_v35.pdf (last visited January 19, 2018).

[15] *See, e.g.,* Illinois Department of Healthcare and Family Services, *Handbook for Providers of Pharmacy Services*, https://www.illinois.gov/hfs/SiteCollection Documents/p200.pdf (last visited January 19, 2018).

pharmacy would charge a cash-paying customer without the benefit of insurance provided through a payer or intermediary with a contract with the pharmacy." The Pharmaceutical Care Management Association, a national association dedicated to representing pharmacy benefit managers, utilizes a similar definition.

(c)     Several reports by the Government Accountability Office on "usual and customary" price trends in drug pricing, issued from August 2005 through February 2011, define the "usual and customary price" as "the price an individual without prescription drug coverage would pay at a retail pharmacy." *See, e.g.*, GAO Report, "Prescription Drugs: Trends in Usual and Customary Prices for Commonly Used Drugs," February 10, 2011.

(d)     The Code of Federal Regulations and the Medicare Prescription Drug Benefit Manual (Chapter 5, §10.2, Benefits and Beneficiary Protections, Rev. 9/30/11) define usual and customary price as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug." 42 C.F.R. §423.100.

(e)     The same Manual (Chapter 14, §50.4.2, n.1) stated that the discounted prices that Wal-Mart charged to its customers "is considered Wal-Mart's 'usual and customary' price."

39.     Rite Aid knows exactly what is required and involved in reporting U&C prices. Rite Aid operates EnvisionRxOptions ("EnvisionRxOptions") as the PBM arm of the Company.[16] Rite Aid acquired EnvisionRxOptions (then known as EnvisionRx) in 2015 to administer pharmacy benefit programs and offer

---

[16]     2017 Form 10-K, filed with the SEC on May 3, 2017 (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

pharmacy benefit management services, including, among other things, claims processing. As a PBM, EnvisionRxOptions maintains a network of participating pharmacies, which, of course, includes Rite Aid retail pharmacies, among others.

40. The current EnvisionRxOptions "Provider Portal" is available to EnvisionRxOptions's network of participating pharmacies and "contains detailed explanations of certain conditions of participation in the EnvisionRx Pharmacy Network. Procedures are outlined for the electronic submission of Pharmacy Claims. Also contained are helpful contact numbers, payment terms, answers to common questions and our pricing and reimbursement process."[17]

41. The Provider Portal states that the participating pharmacies are to submit claims for payment in NCPDP format.

42. The Provider Portal states that pharmacies "may not collect copayments, coinsurances and deductibles that exceed your Pharmacy's [usual and customary price]."

**D.  Other Pharmacies Report Their Generic Prescription Drug Discount Program Prices as Their U&C Prices**

43. Because of the price differentials, generic versions of prescription drugs are liberally and substantially substituted for their brand name counterparts. In every state, pharmacists are permitted (and, in some states, required) to substitute a generic product for a brand name product unless the doctor has indicated that the prescription for the brand name product must be dispensed as written. Today, nearly 89% of all prescriptions are filled with generic drugs.

44. In 2006, the major retailers with pharmacy departments began offering hundreds of generic prescription drugs at reduced prices.[18] These retailers

---

[17]    https://envisionrx.com/pdf/ProviderPortal.pdf (last visited January 19, 2018).

[18]    Tracey Walker, *Big retailers' generic discounts validate the case for low-cost drugs*, MODERN MEDICINE NETWORK, Nov. 1, 2006, http://managed healthcareexecutive.modernmedicine.com/managed-healthcare-executive/news/

1   were likely able to absorb lower margins on generic drug sales because pharmacy

2   sales represented a low percentage of their total sales.

3       45.    For example, in September 2006, Wal-Mart began charging $4 for a

4   30-day supply of the most commonly prescribed generic drugs and $10 for a 90-

5   day supply.  In November of that same year, Target began charging $4 for a 30-day

6   supply of the most commonly prescribed generic drugs and $10 for a 90-day

7   supply.[19]  Upon information and belief, Wal-Mart and Target report to health

8   insurance plans their $4 per 30-day supply for generic prescription drugs as their

9   U&C prices.

10       46.    Shortly after the implementation of these programs, the Centers for

11   Medicare & Medicaid Services ("CMS") offered guidance on the lower cash prices

12   pharmacies were offering on generic prescriptions.[20]  In the October 11, 2006

13   guidance, CMS was careful to note the following:

> Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers.  The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price. Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price. To illustrate, suppose a Plan's usual negotiated price for a specific drug is $10 with a beneficiary copay of 25% for a generic drug. Suppose Wal-Mart offers the same generic drug throughout the benefit for $4.  The Plan considers the $4 to take place of the $10 negotiated price.  The $4 is not considered a lower cash price, because it is not a one-time special price.  The Plan will adjudicate Wal-Mart's claim for $4 and the beneficiary will pay only a $1 copay, rather than

---

clinical/pharmacy/big-retailers-generic-discounts-validate-case-lo?trendmd-shared=0 (last visited January 19, 2018).

[19]    *Target Expands $4 Program on Generics to All Pharmacies*, THE NEW YORK TIMES, Nov. 21, 2006, http://www.nytimes.com/2006/11/21/business/21drug.html (last visited January 19, 2018).

[20]    CMS, *HPMS Q & A – Lower Cash Price Policy*, CENTER FOR BENEFICIARY CHOICES, Oct. 11, 2006, https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovContra/Downloads/QADiscountsandTrOOP_100606.pdf (last visited January 19, 2018).

a $2.50 copay.  This means that both the Plan and the beneficiary are benefiting from the Wal-Mart "usual and customary" price.[21]

**E.      Rite Aid's RSP Prices Are Its True U&C Prices for RSP Generics**

47.     In 2007, Rite Aid created the RSP – a loyalty program targeted to cash customers – to compete with the major retailers' prices for generic drugs.

48.     Upon information and belief, Rite Aid implemented the RSP program as a scheme to maximize reimbursements from third-party payors and payments from consumers through fraudulently inflated U&C prices, while still remaining competitive for cash-paying prescription drug customers.

49.     The RSP program is a discount prescription drug program that offers savings on hundreds of generic prescription drugs.  The RSP program is not a third-party health insurance plan; it is not insurance or a substitute for insurance. Enrollment in the RSP program was, and continues to be, open to cash-paying customers.  Rite Aid does not charge individuals to join the RSP.  Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase, and further, its pharmacists do not advise customers using insurance that the drug being purchased may be cheaper through the RSP.

50.     Rite Aid, through its RSP, allows cash-paying customers to purchase more than 350 widely prescribed generic drugs for $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions.

51.     Rite Aid's RSP formulary includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments.  RSP Prices apply only to prescription generics listed on the formulary.

---

[21]      *Id.*

52.     Rite Aid designed the RSP program to appeal to price-sensitive customers, who, for the most part, take long-term maintenance medications. Customers who take maintenance medications, many of whom are elderly or disabled, are the most valuable to Rite Aid.

53.     Rite Aid's RSP program is not a special, limited, or a one-time offer. Any pharmacy patron is eligible to participate in the program.  Rite Aid does not limit the eligibility for, or duration of the availability of, RSP prices other than to require cash payment.

54.     Thus, Rite Aid RSP Prices clearly fit within the accepted industry meaning and Rite Aid's own understanding of "usual and customary" prices, and thus, represent Rite Aid's true U&C prices for the RSP Generics.

**F.     Rite Aid Improperly Overcharges Plaintiff and the Class for RSP Generics**

55.     As part of the standardized prescription claims adjudication process, Rite Aid is required to accurately state its U&C price for the prescription being dispensed, in accordance with the NCPDP requirements.

56.     The industry standards that Rite Aid follows provide that the U&C price is the cash price offered to the general public for specific drugs.  Rite Aid offers the RSP Price as the cash price to the general public and the RSP Price is, in fact, the most common price paid by Rite Aid's cash-paying customers.  Thus, under industry standards and Rite Aid's own definition, the RSP Price is Rite Aid's U&C price for the RSP Generics.  Rite Aid also knows that it is industry standard that the drug reimbursement price and the amount collected from the consumer cannot exceed the U&C price.

57.     Yet, Rite Aid charges vastly different prices for RSP Generics depending on whether the payer is an insurer or a cash-paying RSP customer. While RSP customers pay $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions of RSP Generics, Plaintiff and members of the Class pay much higher

prices.  Rite Aid effectively maintains an improper dual U&C pricing structure for RSP Generics.

58.    Rite Aid knowingly fails to report, and continues to fail to report, the RSP Price – its true "usual and customary" price – on charges made to consumers, like Plaintiff and the Class.

59.    When Rite Aid adjudicates prescription claims for RSP Generics, it misrepresents the amount of its U&C price on the reimbursement claims forms that Rite Aid submits to third-party payors.  In the field requiring Rite Aid to report its U&C price, Rite Aid does not report its RSP price, which is its true U&C price, but instead reports a much higher price.  Rite Aid thus ignores the true U&C prices, and instead knowingly and improperly charges vastly inflated prices to third-party payors.  As a result, because the amount a consumer must pay is dictated by the inflated U&C price communicated to the third-party payor, the amount that Rite Aid charges consumers is also artificially inflated.

60.    Thus, Rite Aid's failure to maintain and report accurate U&C prices for RSP Generics in the Company's pharmacy computer system has systematically injured and will continue to injure Plaintiff and the Class.

61.    In short, the RSP program allows Rite Aid to compete with its competitors' discounted prices for its cash-paying customers while still receiving higher payments from its customers who carry insurance.  Rite Aid uses the RSP program to hide its true U&C prices from consumers and third-party payors, which allows Rite Aid to continue charging consumers and third-party payors a higher rate for RSP Generics than cash-paying customers through the RSP program.  The RSP program enables Rite Aid to unlawfully report artificially inflated U&C prices to third-party payors and to collect from consumers artificially inflated copays.

62.    Upon information and belief, Rite Aid uses the same inflated U&C price for any given RSP Generic (of the same strength and dosage) that it reports

and charges to Plaintiff and the Class. Thus, the manner in which Rite Aid fails to report and incorporate the RSP Prices into its U&C prices for the RSP Generics is uniform and systematically applied through Rite Aid's electronic prescription claims adjudication process.

63.   Plaintiff and members of the Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the most common price offered to cash-paying members of the general public. Moreover, Plaintiff and members of the Class were unaware that Rite Aid's representation at the point of purchase for the RSP Generics that the copayment demanded and charged was not accurate.

64.   Rite Aid also did not and does not inform Plaintiff and members of the Class, that RSP Prices for RSP Generics are lower than the amount Rite Aid was charging them. Rite Aid either wrongfully conceals or omits such information by failing to tell consumers and third-party payors about the RSP program, or by misrepresenting to consumers and third-party payors that the RSP program would not apply to their purchases.

65.   For instances where the copayment charged to a customer was lower than the RSP price for the same drug, customers were unaware, and incapable of ascertaining, that their copayment would have been lower but for Rite Aid's practice of illegally submitting inflated "usual and customary" prices to third-party payors.

66.   As part of its fraudulent price scheme, Rite Aid has reported and charged U&C prices for RSP Generics that, as demonstrated by the charts below, are up to 24 times the U&C prices reported by some of its most significant competitors and up to 9.5 times its own RSP Prices.

67.   The chart below shows U&C prices submitted to New York's Medicaid program for the purposes of claims adjudication. The U&C prices

submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | SUFFOLK COUNTY, NY | | | | |
| | WalMart | Target | Shoprite | Rite Aid | Rite Aid (RSP Price) |
|---|---|---|---|---|---|
| Carvedilol, 6.25 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $43.98 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $17.33 | $10.00 |
| Lisinopril/HCTZ 20-12.5 mg TAB, quantity 30 | $4.00 | $4.00 | $9.99 | $29.99 | $10.00 |
| Metformin HCL, 1,000 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $37.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $4.00 | $3.99 | $19.66 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $18.76 | $10.00 |
| Fluoxetine, 20 mg, quantity 30 | $4.00 | $4.00 | $9.99 | $28.39 | $10.00 |

68. The chart below shows the U&C prices submitted to Florida's Medicaid program for purposes of claims adjudication. The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | ORLANDO, FL | | | |
| | WalMart | Winn-Dixie | Rite Aid | Rite Aid (RSP Price) |
|---|---|---|---|---|
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $41.99 | $47.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $29.73 | N/A | $37.99 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $21.99 | $95.99 | $10.00 |

69. The chart below shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication. The U&C prices

21

submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | PHILADELPHIA, PA | | | |
|---|---|---|---|---|
| | WalMart | Shoprite | Rite Aid | Rite Aid (RSP Price) |
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $7.49 | $47.99 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $2.99 | $18.99 | $10.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $9.00 | $3.99 | $23.99 | $10.00 |
| Metformin HCL, 1000 mg TAB, quantity 60 | $9.00 | $4.00 | $31.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $5.99 | $21.69 | $10.00 |
| Warfarin, 1 mg TAB, quantity 30 | $4.00 | $4.00 | $20.69 | $10.00 |

## V.   CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following Class:

**Nationwide Class**

All persons or entities in the United States and its territories who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

**OR IN THE ALTERNATIVE**

**California Class**

All persons or entities in California who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic

22

prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

71.    Excluded from each Class are:

(a)    The Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns;

(b)    All governmental entities, except for governmental-funded employee benefit plans;

(c)    All persons or entities who purchased RSP Generics for purposes of resale;

(d)    Any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

72.    <u>Numerosity</u>: The proposed Class consists of at least hundreds of thousands, and likely millions, of individual Rite Aid customers as well as numerous third-party payors, making joinder of all members impractical.  The exact size of the Class and the identities of the individual members thereof are ascertainable through Rite Aid's records, including, but not limited to, their billing and collection records.

73.    <u>Superiority of Class Action</u>: Plaintiff and the Class suffered, and will continue to suffer, harm as a result of Rite Aid's unfair, deceptive, unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome for the courts in which the individual litigations would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Rite Aid's common course of conduct.  The class action device allows a single court to provide the benefits of uniform adjudication,

judicial economy, and the fair and equitable handling of all the Class members' claims in a single forum.

74.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class members because Plaintiff and all of the Class members' claims originate from the same willful conduct, practice, and procedure on the part of Rite Aid and Plaintiff possesses the same interests and has suffered the same injuries as each Class member.  Like all members of the proposed Class, Plaintiff was overcharged by Rite Aid for RSP Generics who reported and charged him prices that Rite Aid fraudulently inflated far above its U&C prices.

75.   <u>Common Questions of Law and Fact Predominate</u>: There are questions of law and fact common to Plaintiff and the Class members, and those questions substantially predominate over any questions that may affect individual members of the Class within the meaning of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).  Common questions of fact and law include:

(a)   whether Rite Aid artificially inflated the U&C prices it reported and charged for RSP Generics above the price that cash-paying Rite Aid customers pay for the same prescriptions;

(b)   whether Rite Aid omitted and concealed material facts from its communications and disclosures regarding its pricing scheme;

(c)   whether Rite Aid has overcharged and continues to overcharge Plaintiff and Class members who paid for RSP Generics;

(d)   whether Rite Aid engaged in unfair methods of competition, unconscionable acts or practices, and unfair, deceptive, and unlawful acts or practices in connection with the pricing and sale of RSP Generics;

(e)   whether, as a result of Rite Aid's misconduct, Plaintiff and Class members have to seek restitution and damages, and if so, the amount of restitution and damages;

(f)     whether, as a result of Rite Aid's misconduct, Plaintiff and the Class members are entitled to equitable or other relief, and, if so, the nature of such relief; and

(g)     whether, as a result of Rite Aid's misconduct, Rite Aid should be enjoined from engaging in such conduct in the future.

76.     The Class has a well-defined community of interest.  Rite Aid has acted and failed to act on grounds generally applicable to Plaintiff and Class members, requiring the Court's imposition of uniform and final injunctive relief and corresponding declaratory relief to ensure compatible standards of conduct toward the Class.

77.     Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests adverse to those of the Class members.

78.     Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

79.     Plaintiff and the Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief until recently.

80.     Plaintiff and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the unlawful conduct alleged herein until recently.  Specifically, Plaintiff only became

aware of the existence of Rite Aid's unlawful conduct in mid-January 2018, through the investigation of Plaintiff's counsel, which occurred in mid-January 2018. Such investigation included a review of Plaintiff's prescription drug pharmacy records, Plaintiff's Medicare and Medicare Advantage membership, and Rite Aid's RSP Generics.

81. Rite Aid's pricing scheme did not reveal facts that would have put Plaintiff or the Class members on notice that Rite Aid was reporting and charging inflated prices for RSP Generics. Rite Aid misrepresented at the point of purchase that the copayment was accurate; and Rite Aid omitted at the point of purchase that Plaintiff was not receiving any benefit from his insurance.

82. Because Rite Aid did not disclose the pricing scheme, Plaintiff and the Class members were unaware of Rite Aid's unlawful conduct alleged herein and did not know that they were paying artificially inflated prices for RSP Generics.

83. Not only did Rite Aid fail to disclose material information, but it also actively misled consumers by inflating and misrepresenting U&C prices for RSP Generics to Plaintiff that were far higher than the RSP Prices (the actual U&C prices). Rite Aid also failed to post drug prices in a clear manner and in a way that would alert Plaintiff and the Class members to the artificially inflated prices charged by Rite Aid. By so doing, Rite Aid misled Plaintiff and the Class members into overpaying for RSP Generics.

84. Rite Aid's affirmative acts alleged herein, including acts in furtherance of its unlawful pricing scheme, were wrongfully concealed and carried out in a manner that precluded detection.

85. Under the circumstances alleged, Rite Aid owed a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs.

86.    The relationship between Rite Aid and Plaintiff and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of the Plaintiff and the Class.  As a pharmacy providing prescription medication to consumers, Rite Aid owes a duty to provide accurate information regarding the prices of generic prescription drugs, including RSP Generics.  Furthermore, as a pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications.[22]  Plaintiff and the Class reasonably expected Rite Aid to help "achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."[23]

87.    The relationship between Rite Aid and Plaintiff and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiff and the Class.  As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Rite Aid, Rite Aid owes a duty to Plaintiff and the Class to provide them with accurate information regarding the U&C price of generic prescription drugs, including RSP Generics.

88.    Rite Aid also had a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs because it was entirely likely and foreseeable that Plaintiff and the Class would be injured when they paid for RSP Generics at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct. Rite Aid knows exactly what is required and involved in reporting U&C prices given that Rite Aid's own Provider Portal requires Rite Aid not to exceed the U&C

---

[22]    Code of Ethics, American Pharmacists Association, https://www.pharmacist.com/code-ethics (last visited January 19, 2018).

[23]    *Id.*

prices when submitting claims, and thus to charge the lower RSP price to Plaintiff and the Class.  Imposing a duty to provide Plaintiff and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (*i.e.*, the U&C price).  *See*, *e.g.*, 31 U.S.C. §§3729, *et seq*.; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R. §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b); Cal. Welf. & Inst. Code §14105.455.

89.    Plaintiff and the Class members could not have discovered the alleged unlawful activities at an earlier date by exercise of reasonable diligence because Rite Aid employed deceptive practices and techniques of secrecy to avoid detection of its activities. Rite Aid fraudulently concealed its activities by various means and methods, including misrepresentations regarding the real U&C prices of the RSP Generics.

90.    Because Rite Aid affirmatively concealed its pricing scheme, Plaintiff and the Class had no knowledge until mid-January 2018, through the investigation of Plaintiff's counsel, which occurred in mid-January 2018.  Such investigation included a review of Plaintiff's prescription drug pharmacy records, Plaintiff's Medicare and Medicare Advantage membership, and Rite Aid's RSP Generics. Prior to mid-January 2018, Plaintiff was not aware of the alleged fraudulent activities or information which would have caused a reasonably diligent person to investigate whether Rite Aid committed the actionable activities detailed herein.

91.    As a result of Rite Aid's fraudulent concealment, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and

the Class members have as a result of the unlawful conduct alleged in this Complaint.

92.     Regardless, Rite Aid's illegal scheme is continuous, and the pharmacy violates the law each time it charges inflated copayments to both new and repeat customers.

## VII.   FIRST CLAIM FOR RELIEF

### Negligent Misrepresentation
### Asserted by Plaintiff on Behalf of the Class and California Class

93.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

94.     Plaintiff alleges this claim on behalf of himself and the Class, or, in the alternative, on behalf of the California Class.

95.     Under the circumstances alleged, Rite Aid owed a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs.

96.     The relationship between Rite Aid and Plaintiff and the Class is one such that Rite Aid has an obligation of reasonable conduct for the benefit of the Plaintiff and the Class.   As a pharmacy providing prescription medication to consumers, Rite Aid owes a duty to provide accurate information regarding the prices of generic prescription drugs, including RSP Generics.   Furthermore, as a pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications.[24]   Plaintiff

---

[24]     Code of Ethics, *supra* note 22.

and the Class reasonably expected Rite Aid to help "achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."[25]

97.    The relationship between Rite Aid and Plaintiff and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiff and the Class.  As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Rite Aid, Rite Aid owes a duty to Plaintiff and the Class to provide them with accurate information regarding the U&C price of generic prescription drugs, including RSP Generics.

98.    Rite Aid also had a duty to Plaintiff and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs because it was entirely likely and foreseeable that Plaintiff and the Class would be injured when they paid for RSP Generics at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.  Rite Aid knows exactly what is required and involved in reporting U&C prices, given that Rite Aid's own Pharmacy Manual defines U&C and application of that definition would have required Rite Aid to charge the lower RSP price to Plaintiff and the Class.  Imposing a duty to provide Plaintiff and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (i.e., the U&C price).  *See*, *e.g.*, 31 U.S.C. §§3729, *et seq.*; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R.

---

[25]    *Id.*

§§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b); Cal. Welf. & Inst. Code §14105.455.

99.   Rite Aid materially misrepresented and concealed the true U&C prices of RSP Generics.

100.   The true U&C price is material to Plaintiff and the Class because the misrepresentation and concealment of the true U&C price of RSP Generics causes them to be unable to accurately evaluate the cost of the prescriptions being purchased and, in fact, causes them to overpay for those prescriptions.  Had they known Rite Aid was reporting to and charging them inflated and false amounts, they would not have proceeded with the transactions.

101.   Rite Aid made such misrepresentations and omissions to Plaintiff and the Class each time Rite Aid reported and charged artificially inflated prices for RSP Generics.

102.   Rite Aid had no reasonable grounds to believe that these misrepresentations and omissions were true.  The prices Rite Aid reported to third-party payors were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to cash-paying customers.

103.   Rite Aid intended to induce Plaintiff and the members of the Class to rely on its misrepresentations and omissions.  Rite Aid knew that Plaintiff and the members of the Class would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a result, Plaintiff and the members of the Class would pay higher prices than the true U&C prices for RSP Generics.

104.   Plaintiff and members the Class justifiably relied on Rite Aid's misrepresentations and omissions in that Plaintiff and the Class would not have purchased or paid for RSP Generics from Rite Aid at falsely inflated amounts but for Rite Aid's misrepresentations and omissions.  Plaintiff and the Class' reliance on Rite Aid's misrepresentations and omissions is, thus, to their detriment.

105.   As a proximate result of Rite Aid's negligent conduct, Plaintiff and the Class have been damaged because they paid for RSP Generics at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

106.   Rite Aid is therefore liable to Plaintiff and the Class for the damages they sustained.

## VIII.  SECOND CLAIM FOR RELIEF

<u>Unjust Enrichment</u>
**Asserted by Plaintiff on Behalf of the Class and the California Class**

107.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

108.   Plaintiff alleges this claim on behalf of himself and the Class, or, in the alternative, on behalf of the California Class.

109.   By means of Rite Aid's wrongful conduct alleged herein, Rite Aid knowingly reported to and charged Plaintiff and the Class inflated prices for RSP Generics in a manner that is unfair and unconscionable and violates the fundamental principles of justice, equity, and good conscience.

110.   Rite Aid knowingly received, appreciated, and retained wrongful benefits and funds from Plaintiff and the Class.  In so doing, Rite Aid acted with conscious disregard for the rights of Plaintiff and the Class.

111.   As a result of Rite Aid's wrongful conduct as alleged herein, Rite Aid has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

112.   Rite Aid's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

113.   Under the common law doctrine of unjust enrichment, it is inequitable for Rite Aid to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of artificially inflated prices on Plaintiff

32

and the Class in an unfair and unconscionable manner.  Rite Aid's retention of such funds under the circumstances alleged herein violates the fundamental principles of justice, equity, and good conscience and therefore constitutes unjust enrichment.

114.   Plaintiff and the Class did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Rite Aid to retain these wrongfully obtained proceeds.

115.   Rite Aid is therefore liable to Plaintiff and the Class for restitution in the amount of Rite Aid's wrongfully obtained profits.

## IX.    THIRD CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
#### (Based on Unfair Acts and Practices)
**Asserted by Plaintiff on Behalf of the California Class**

116.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

117.   Plaintiff brings this claim on behalf of himself and the members of the California Class against Rite Aid.

118.   At all relevant times, Rite Aid, Plaintiff, and the California Class were "persons" within the meaning of Cal. Bus. & Prof. Code §17204.

119.   Under Business and Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.  Rite Aid's unjustified, inflated pricing of RSP Generics is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Generics is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Generics.

120.   Plaintiff and the California Class are entitled to restitution because of Rite Aid's employment of unfair business acts or practices in connection with the sale of RSP Generics to Plaintiff and the California Class, by, among other things:

(a)   reporting to and charging Plaintiff and the California Class unfairly inflated U&C prices for the RSP Generics;

(b)   concealing from Plaintiff and the California Class the true U&C prices of the RSP Generics; and

(c)   wrongfully obtaining monies from Plaintiff and the California Class as a result of its deception.

121.   Rite Aid has engaged, and continues to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) the FTCA, 15 U.S.C. §45(a)(1), against unfair or deceptive practices; (4) Cal. Penal Code §550 against making false, misleading, or fraudulent claims related to health or other insurance benefits; (5) 42 C.F.R. §447.512(b), requiring pharmacies to not seek reimbursement from Medicare Part D that exceeds the providers' "usual and customary charges to the general public"; (6) Federal False Claims Act, 31 U.S.C. §§3729, *et seq.* and California False Claims Act, Cal. Gov't Code §§12650, *et seq.*, against submitting false or fraudulent claims for payment to governmental entities; and (7) Cal. Welf. & Inst. Code §14105.455, requiring pharmacy providers to submit their usual and customary charge when billing the Medi-Cal program for prescribed drugs.   Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with these laws.

122.   Rite Aid's conduct, including misrepresenting the U&C price of RSP Generics, is substantially injurious to consumers.   Such conduct has caused, and

continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, fraudulent, false, and unfair acts and practices. Consumers have thus overpaid for RSP Generics. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Rite Aid's conduct. Since consumers reasonably rely on Rite Aid's representations of its merchandise and injury results from ordinary use of its merchandise, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

123.   Rite Aid willfully and knowingly engaged in the deceptive and unfair acts and practices described above and knew or should have known that those acts and practices were unlawful and thus in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*

124.   The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff and the members of the California Class about whether to pay for Rite Aid's RSP Generics, in that they would not have proceeded with the transaction but for Rite Aid's deceptive, fraudulent, false, and unfair acts and practices.

125.   Rite Aid intended for Plaintiff and the members of the California Class to pay for RSP Generics in reliance upon Rite Aid's deceptive and unfair acts and practices.

126.   As a direct and proximate result of Rite Aid's deceptive, fraudulent, false, and unfair acts and practices, Plaintiff and the members of the California Class were deceived into paying artificially inflated prices for RSP Generics and are entitled to restitution.

127. Rite Aid is therefore liable to Plaintiff and the members of the California Class for restitution, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

## X.    FOURTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### (Based on Unlawful Acts and Practices)
### Asserted by Plaintiff on Behalf of the California Class

128. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

129. Plaintiff brings this claim on behalf of himself and the members of the California Class against Rite Aid.

130. At all relevant times, Rite Aid, Plaintiff, and the California Class were "persons" within the meaning of Cal. Bus. & Prof. Code §17204.

131. The violation of any law constitutes an unlawful business practice under Business and Professions Code §17200.

132. Rite Aid violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200, *et seq.*, the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45(a)(1), Cal. Penal Code §550, 42 C.F.R. §447.512(b)(2), Cal. Welf. & Inst. Code §14105.455, 31 U.S.C. §§3729, *et seq.*, 42 U.S.C. §1320c-5(a)(1), 42 U.S.C. §1320a-7(b)(6), 42 C.F.R. §§423.505(i)(4)(iv), (k)(3), 42 C.F.R. §447.512(b), and by violating the common law. By violating these laws, Rite Aid has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

133. Rite Aid willfully and knowingly engaged in the unlawful acts and practices alleged herein above and knew or should have known that those acts and

36

1  practices were unlawful and thus in violation of California's Unfair Competition

2  Law, Cal. Bus. & Prof. Code §17200, *et seq.*

3      134.   The facts that Rite Aid misrepresented and concealed were material to

4  the decisions of Plaintiff and the members of the California Class about whether to

5  pay for Rite Aid's RSP Generics, in that they would not have proceeded with the

6  transaction but for Rite Aid's unlawful, deceptive, fraudulent, false, and unfair acts

7  and practices.

8      135.   Rite Aid intended for Plaintiff and the members of the California

9  Class to pay for RSP Generics in reliance upon Rite Aid's unlawful, deceptive,

10  false, unfair acts and practices.

11      136.   As a direct and proximate result of Rite Aid's unlawful, deceptive and

12  unfair acts and practices, Plaintiff and the members of the California Class were

13  deceived into paying artificially inflated prices for RSP Generics and have been

14  damaged thereby.

15      137.   Rite Aid is therefore liable to Plaintiff and the members of the

16  California Class for restitution, injunctive relief, costs, and reasonable attorneys'

17  fees to the extent provided by law.

18  **XI.    FIFTH CLAIM FOR RELIEF**

19               **Violation of the Consumer Legal Remedies Act ("CLRA")**
                     **(for Injunctive Relief)**

20          **Asserted by Plaintiff on Behalf of the California Class**

21      138.   Plaintiff repeats each and every allegation contained in the paragraphs

22  above and incorporates such allegations by reference herein.

23      139.   Plaintiff brings this claim on behalf of himself and the members of the

24  California Class against Rite Aid.

25      140.   Rite Aid is a "person" within the meaning of Cal. Civil Code

26  §1761(c).

27

28

141.   Each sale by Rite Aid of a RSP Generic constitutes a "transaction" within the meaning of Cal. Civil Code §1761(e).

142.   The RSP Generics that Plaintiff and California Class members paid for are "goods" within the meaning of Cal. Civil Code §1761(a).

143.   Plaintiff and California Class members are "consumers" within the meaning of Cal. Civil Code §1761(d).

144.   Plaintiff and California Class members paid for prescriptions for the medically-necessary treatment of illnesses.  These payments qualify as transactions that resulted in the sale of goods to consumers for personal use within the meaning of Cal. Civil Code §§1761 and 1770(a).

145.   Plaintiff and the California Class have suffered losses because of Rite Aid's employment of deceptive, fraudulent, false and unfair business acts or practices in connection with the sale of RSP Generics to Plaintiff and the California Class, by, among other things:

(a)   reporting to and charging Plaintiff and the California Class fraudulently inflated U&C prices for the RSP Generics;

(b)   communicating to and charging Plaintiff and the California Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)   concealing from Plaintiff and the California Class the true U&C prices of the RSP Generics; and

(d)   wrongfully obtaining monies from Plaintiff and the California Class as a result of its deception.

146.   The acts and practices of Rite Aid as described above were intended to deceive Plaintiff and members of the California Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the California Class.  These actions violated and continue to violate: (i) §1770(a)(13)

of the CLRA, in that Rite Aid's acts and practices constitute false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; and (ii) §1770(a)(16) of the CLRA, in that Rite Aid's acts and practices constitute false or misleading statements of fact in representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

147.   By committing the acts alleged above, Rite Aid has violated the CLRA.

148.   Rite Aid willfully and knowingly engaged in the deceptive, fraudulent, false, and unfair acts and practices alleged herein above and knew or should have known that those acts and practices were deceptive, fraudulent, false and unfair and thus in violation of the CLRA.

149.   The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff and the members of the California Class about whether to pay for Rite Aid's RSP Generics, in that they would not have proceeded with the transaction but for Rite Aid's deceptive, fraudulent, false, and unfair acts and practices.

150.   Rite Aid intended for Plaintiff and the members of the California Class to pay for RSP Generics in reliance upon Rite Aid's deceptive, fraudulent, false, and unfair acts and practices.

151.   As a direct and proximate result of Rite Aid's deceptive, fraudulent, false, and unfair acts and practices, Plaintiff and the members of the California Class were deceived into paying artificially inflated prices for RSP Generics and have been damaged thereby.

152.   Rite Aid is therefore liable to Plaintiff and the members of the California Class for injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

## XII.   SIXTH CLAIM FOR RELIEF

### Declaratory and Injunctive Relief
**Asserted by Plaintiff**

153.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

154.   Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the state statutes described in this Complaint.

155.   During the Class Period, Rite Aid's deceptive inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years'-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day.   Therefore, Plaintiff faces a substantial and imminent risk of future harm and will be injured in the future.

156.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Rite Aid's conduct continues to violate the statutes and laws referenced herein.

157.   The Court also should issue corresponding injunctive relief enjoining Rite Aid from conducting business through the unlawful, unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint; and requiring Defendant to implement whatever measures are necessary to remedy the unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint.

158.   Legal remedies are inadequate to address the substantial likelihood of future harm Plaintiff will sustain in making purchases of PSC Generics.   While monetary damages will compensate Plaintiff for Rite Aid's past misconduct,

40

monetary damages will not prevent future misconduct, which Plaintiff has alleged is likely to occur.

159.   The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Rite Aid if an injunction is issued.  Plaintiff and members of the Class will likely incur damages.  On the other hand, the cost to Rite Aid of complying with an injunction is relatively minimal, especially given its pre-existing obligation to do so.

160.   Issuance of the requested injunction will not disserve the public interest.   To the contrary, such an injunction would benefit the public by controlling skyrocketing prescription drug costs for hundreds of thousands, if not millions, of consumers and the third-party payors that pay for prescription benefit coverage for those individuals.

## XIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the members of the Class seek judgment in an amount to be determined at trial, as follows:

A.     That all members of the Class are owed at least the difference between the amount they paid and the U&C offered to the general public for all RSP Generics purchased during the applicable liability period of the RSP program;

B.     That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, and declare that Plaintiff is proper Class representatives;

C.     That the Court grant permanent injunctive relief to prohibit Rite Aid from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.     That the Court award compensatory, consequential, and general damages in an amount to be determined at trial;

1  E.  That the Court order disgorgement and restitution of all earnings,

2  profits, compensation, and benefits received by Rite Aid as a result of its unlawful

3  acts, omissions, and practices;

4  F.  That the Court award statutory treble damages, and punitive or

5  exemplary damages, to the extent permitted by law;

6  G.  That the unlawful acts alleged in this Complaint be adjudged and

7  decreed to be a violation of the unfair and deceptive business acts and practices in

8  violation of the consumer protection statutes alleged herein;

9  H.  That the Court enter a declaratory judgment in favor of Plaintiff, as

10  described above;

11  I.  That the Court award to Plaintiff the cost and disbursements of the

12  action, along with reasonable attorneys' fees;

13  J.  That the Court award pre- and post-judgment interest at the maximum

14  legal rate; and

15  K.  That the Court grant all such other relief as it deems just and proper.

16  **XIV.  JURY DEMAND**

17  Plaintiff and the members of the Class hereby demand a jury trial on all

18  claims so triable.

19  Dated:  December 11, 2018   **SCOTT+SCOTT ATTORNEYS AT**
   **LAW LLP**

20

21   *s/* Joseph P. Guglielmo

22  Joseph P. Guglielmo (*pro hac vice*)
   Erin Green Comite (*pro hac vice*)

23  The Helmsley Building

24  230 Park Avenue, 17th Floor
   New York, NY 10169

25  Telephone: 212-223-6444

26  Facsimile:  212-223-6334
   jguglielmo@scott-scott.com

27  ecomite@scott-scott.com

28

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Walter W. Noss
Julie A. Kearns
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
wnoss@scott-scott.com
jkearns@scott-scott.com

Alfred G. Yates, Jr.
**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
300 Mt. Lebanon Boulevard, Suite 206-B
Pittsburgh, PA 15234-1507
Telephone: 412-391-5164
Facsimile:  412-471-1033
yateslaw@aol.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants of record.

_s_/ Joseph P. Guglielmo
Joseph P. Guglielmo